*109
 
 ASHBURN, J.
 

 Defendant was convicted of robbery in the first degree, was found to be an habitual criminal on the basis of two admitted priors, and was sentenced for the term prescribed by law. He bases his appeal on the contentions that certain evidence was obtained as a result of an unlawful search and seizure and that his confession, also in evidence, was not voluntary.
 

 At about 8 o’clock in the evening of October 25, 1960, a robbery occurred at the Budget Town Pood Market in Monrovia. Two men entered the store and ordered David Greely, a clerk, to put money in a sack. One of the men was holding a gun. They then ordered the clerk to lie on the floor, and ordered Donna May Ray, another employee, to lie on the floor next to him. They then departed with the money. Defendant was arrested a few days later in Las Vegas and subsequently confessed. His partner in crime, Peter Schales, was also apprehended and testified on behalf of the People. Defendant was identified as the man holding the gun by the two market employees.
 

 The facts leading up to defendant’s arrest, and on which the argument of illegal search is based, are as follows: Shortly after the robbery Greely called the police and described the robbers, describing the one holding the gun as being 35-40 years of age, about 5 feet 10 inches, wearing a gray shirt, a gray “coat-sweater” and gray hat, horn-rimmed glasses, and as having a dark complexion. Officer Gilliland investigated the robbery and testified that the manager of the market gave him a checkbook, saying it had been found in the parking lot to the rear of the store shortly after the robbery. Defendant’s name was in the checkbook. The officer called the Bank of America, checked the account number and found the account registered in defendant’s name. Two of the check stubs referred to rent payments made to the Mayfair Hotel. Gilliland then went to the Pomona Police Department to see if defendant had a record. He discovered that defendant had a record of robbery and murder. He obtained a photograph of defendant and took it to the market to show the victims. They said that the photograph looked like the man that held the gun. He then continued his record check and at about 10 o’clock that night, October 27, he went to the Pomona Police Department with Officer Collins and discussed the Mayfair Hotel with two detectives and left with them and Officer Collins for the Mayfair at about 11 p. m. They entered the lobby, approached the night clerk, and asked
 
 *110
 
 about defendant. They were told he lived in the hotel in room No. 404, but that he was out. The clerk said he knew defendant was out because hotel regulations required that tenants’ keys be placed in their mail boxes when they left the hotel, and defendant’s key was in his box. The officers requested permission to enter the room, explaining that they wished to make an arrest of a man who had possibly committed a robbery. The clerk stated, “In this case, I will be more than happy to give you permission and I will take you directly to the room.” They went to defendant’s room, the night clerk placed the key in the lock, unlocked the door and said, “Be my guest.” The officers entered the room and observed a pair of horn-rimmed glasses on a desk. On closer examination they resembled the glasses described by the victims as having been worn by the man holding the gun. They then began a systematic search and noted that certain clothing in the room was ‘ ‘ along the same description ’ ’ as given by the victims. Officer Collins, in pulling out the bottom drawer of the bureau, found a gun lying on the floor, together with some bullets wrapped in toilet paper. Following the search they maintained an observation “of the room or in the room” until approximately noon the following day, October 28, but no one arrived except other detectives. Defendant was picked up in Las Vegas about noon on October 29, 1960. The Monrovia officers then departed for Las Vegas. Defendant waived extradition and was returned to Pomona on October 31,' 1960.
 

 It is on this testimony that defendant rests his contention that the items found in his room should have been excluded from evidence as having been illegally obtained. His first argument is that the officers had time to procure a search warrant, and their failure to do so made the search illegal. In support of this contention defendant merely points out that the robbery took place on October 25 and the search on October 27. He completely ignores the fact that the interval was used for investigation to pin down defendant as a suspect. Furthermore, it is conclusively established in this state that the failure to obtain a warrant, even though there be time to do so, does not make unreasonable an otherwise reasonable search.
 
 (People
 
 v.
 
 Winston,
 
 46 Cal.2d 151 [293 P.2d 40];
 
 Lorenzen
 
 v.
 
 Superior Court,
 
 150 Cal.App.2d 506, 510-511 [310 P.2d 180] ;
 
 People
 
 v.
 
 Dominguez,
 
 144 Cal.App.2d 63, 65 [300 P.2d 194].)
 

 Defendant’s second argument is that the search cannot be justified as being incidental to an arrest, although he eon-
 
 *111
 
 cedes,
 
 arguendo,
 
 that there was good cause to suspect that defendant was one of the robbers and that the officers “probably” had good cause to suspect that the room contained evidence. His argument is based on the fact that the clerk told the officers that defendant was not in his room (and therefore they could not have gone to his room to arrest him, but merely to search) and the fact that defendant was arrested approximately 36 hours after the search took place. These arguments are not persuasive.
 

 In
 
 People
 
 v.
 
 Luna,
 
 155 Cal.App.2d 493 [318 P.2d 116], officers received information from an informant that he had just purchased narcotics from the defendant in the latter’s apartment. They went there, knocked on the door and received no response. They forced entry and found narcotics. They waited until defendant returned and took him into custody. The opinion states that in view of the information which the officers had they could reasonably infer that appellant was there and refusing to answer. Under the circumstances it cannot be contended that a search prior to arrest was other than incidental thereto. At page 495 it was said: “In such eases ‘the important considerations are whether the officer had reasonable cause before the search to make an arrest and whether the search and any seizures incident thereto were or were not more extensive that would reasonably be justified as incident to an arrest. . . .’
 
 (People
 
 v.
 
 Simon,
 
 45 Cal.2d 645, 648 [290 P.2d 531].) ‘... it has been held that it is not significant whether the search precedes or follows the arrest. ’
 
 (Id.
 
 p. 648.) ”
 

 People
 
 v.
 
 Vice,
 
 147 Cal.App.2d 269 [305 P.2d 270], presents a factual situation somewhat similar to ours. In that case the officers having reasonable cause to make an arrest went to defendant’s hotel, knocked on his door and receiving no reply they entered when an employee of the hotel opened the door with a key. Defendant was arrested a half hour later in a different part of town. He was subsequently convicted on the basis of evidence found in his hotel room prior to his arrest. At page 273 the opinion states: “Recent authorities hold that in order for a search and seizure to be valid it is not necessary that the arrest precede the search and seizure. If the search and seizure are part of the same transaction, the search and seizure may occur prior to the arrest.” And at page 274: “In the instant case, although the seizure of the narcotics preceded the arrest of the appellant by a half hour or so, nevertheless the arrest and the seizure were part of one single
 
 *112
 
 transaction.
 
 Though he was not present in the room at the time the officers arrived they went there for the specific purpose of arresting him.
 
 The finding of the narcotics by the officers after entering the room was not needed in order to make a valid arrest. The arrest was made upon the basis of information supplied by two known, reliable informants, and the arresting process began when the officers first went to the appellant’s hotel room. The three officers, Inspectors House, Best and Murphy, were acting together.” (Emphasis added.)
 

 In
 
 People
 
 v.
 
 Williams,
 
 189 Cal.App.2d 29 [11 Cal.Rptr. 43], defendant was convicted of robbery and burglary. The police, having probable cause to make an arrest and search, entered defendant’s room in his absence and discovered evidence which was used at the trial. Defendant was not arrested until four hours later when he returned to the apartment. It was held that the search was incidental to the arrest.
 

 In
 
 People
 
 v.
 
 Baca,
 
 184 Cal.App.2d 693 [7 Cal.Rptr. 864], the officers had reasonable ground to make an arrest and to assume that contraband was on defendant’s premises. However, since defendant had been observed leaving his apartment, the officers knew that he was not there. Nevertheless they entered his apartment and obtained evidence that was used at the trial. Defendant was arrested 20 minutes later. At page 699 of the opinion the court said: “Rudy complains that the officers entered and searched his home without a search warrant, prior to his own arrest, and at a time when they knew he was not there. As previously pointed out, it is not significant whether the search precedes or follows the arrest provided they are part of the same transaction.
 
 (People
 
 v.
 
 Vice, supra; People
 
 v.
 
 Simon, supra.)
 
 In such ease the important consideration is whether the officer had reasonable cause before the search to make an arrest.
 
 (People
 
 v.
 
 Simon, supra; People
 
 v.
 
 Luna,
 
 155 Cal.App.2d 493, 495 [318 P.2d 116].) We have already held that the officers had reasonable cause to arrest both defendants. And it is apparent that the arrests and the search of the premises were part of the same transaction. The arrest of Rudy was simply a matter of contacting him and this took place about 20 minutes after the entry of the house by the officers. In the
 
 Vice
 
 case,
 
 supra,
 
 the court pointed out (p. 274) that ‘although the seizure of the narcotics preceded the arrest of the appellant by a half hour or so, nevertheless the arrest and the seizure were part of one single transaction.’ ” See also
 
 People
 
 v.
 
 Dillard,
 
 168 Cal.App.2d 158 [335 P.2d 702].
 

 
 *113
 
 In the ease
 
 at
 
 bar it is quite clear that the officers had probable cause to make an arrest and it cannot be reasonably contended that they were required to accept the night clerk’s statement that defendant was not in his room. Furthermore, it may be reasonably inferred that they entered his room for the purpose of making an arrest. Having lawfully entered the room the officers observed in plain view a pair of glasses which answered the description of glasses said by the victims to be worn by the robber who had held the gun. This led them to the discovery of other items of evidence in the hotel room. It is not contended that their search was conducted in an unreasonable manner. Furthermore, when investigating officers observe one item in plain sight which gives rise to a legitimate suspicion it is reasonable for them to conduct a further investigation.
 
 (People
 
 v.
 
 Murphy, 173
 
 Cal.App.2d 367, 377 [343 P.2d 273].) Moreover, it is quite clear that under the eases discussed above there would be no question about the search being incidental to an arrest if the defendant had returned to his room shortly after the officers had arrived and they had arrested him there. It would be unsound to hold that defendant, by his action in going to Las Vegas and not returning to his room and making himself available for arrest, could invalidate an otherwise lawful search. The fact that defendant was arrested in a neighboring State, a substantial distance from the point where the search took place, within 36 hours after the officers went to his room, gives rise to a strong inference that the police were quite diligent in their efforts to locate defendant and that the search and arrest were part of the same transaction within the meaning of the above-cited cases.
 

 Defendant also contends that his confession was not voluntary, and therefore, should not have been admitted in evidence. He argues that his confession was the result of the cumulative effect of (1) the fact that he was arrested on October 29 and not arraigned until November 1; (2) a failure to permit defendant to call his wife by telephone; (3) movement from jail to jail; and (4) the confronting of defendant with evidence unlawfully obtained. Obviously item (4) is no longer of concern. Items (1) and (3) fall before testimony of Officer Gilliland that defendant was picked up at noon on the 29th in Las Vegas, the officers went to get him, returned him to Los Angeles County, stopped at the Pomona Police Department at defendant’s request so that he might see and talk to his parole officer, and from there took him directly to the Temple City
 
 *114
 
 jail where they booked him. This was on October 31, 1960. They did not arrive in Los Angeles County until the afternoon of October 31. Defendant was arraigned on November 1, following his confession, which was given at 10:30 a. m. Officer Gilliland merely asked him if he was involved in the robbery and defendant answered in the affirmative, having been advised by his parole officer to cooperate with the police. Under these circumstances it does not appear that there was any unnecessary delay or that defendant was treated unfairly in any way. .
 

 Since all of defendant’s assertions respecting promise of reward or benefit were denied by the police witnesses, defendant 's contention must rest on the following testimony of Officer Collins: “ Q. What about . . . the confession in Temple
 
 City;
 
 what sort, of statements had been made to Hr. Stoner concerning telephone calls and talking to his wife ? A. The only statement that I can recall was as we were leaving the Detective Bureau of the Pomona Police Department to put Mr. Stoner in jail to await the arrival of his parole officer. This was in the afternoon of the 31st of October. Mr. Stoner said that he would like to call his wife. I told him that he could make a telephone call at the Temple Sheriff’s Substation after he was booked in, but that I would rather he did not call his wife now. This was at that time because the second party who was involved in the robbery had not been positively identified and his whereabouts was unknown to me then. The Court: Did you tell him that? The Witness: Yes, sir. The Court: All right. The Witness: And that I would rather that he did not. But if he insisted, he could make a phone call when he was booked into the Temple City Sheriff’s Substation. Q. By Mr. Taylor : Did you ever tell Mr. Stoner that unless he confessed to you, you would not let him telephone his wife? A. No, sir. Q. Did you condition his confession on seeing his wife? A. No, sir.”
 

 Although it is true that the choice between conflicting evidence on the subject of voluntariness is the province of the trial court, where evidence is uncontradicted the appellate tribunal must accept it as true and make its own determination as to whether a confession was coerced.
 
 (People
 
 v.
 
 Baldwin,
 
 42 Cal.2d 858, 867 [270 P.2d 1028];
 
 People
 
 v.
 
 Millum,
 
 42 Cal.2d 524, 527 [267 P.2d 1039];
 
 People
 
 v.
 
 Speaks,
 
 156 Cal.App.2d 25, 36 [319 P.2d 709];
 
 People
 
 v.
 
 Lindsey,
 
 188 Cal.App.2d 471, 478-479 [10 Cal.Rptr. 488];
 
 People
 
 v.
 
 Trout,
 
 54 Cal.2d 576, 583 [6 Cal.Rptr. 759, 354 P.2d 231];
 
 People
 
 v.
 
 *115
 

 Berve,
 
 51 Cal.2d 286, 290 [332 P.2d 97].) If it be said to be inferable that Officer Collins’ statement had the effect of coercion rather than persuasion, defendant certainly could not have been coerced to do more than wait until he had been booked before he made a telephone call. It strains one’s credulity to suggest that defendant would involuntarily confess to a crime merely because he was required to wait before making a telephone call.
 

 People
 
 v.
 
 Kendrick,
 
 56 Cal.2d 71, 85 [14 Cal.Rptr. 13, 363 P.2d 13]: “We take up separately the more important facts relied upon by defendant: The fact that defendant was not taken before a magistrate within the time required by the statute has been held by this court [citations] and by the Supreme Court of the United States [citation] not to render a confession involuntary as a matter of law. It is only one of the relevant circumstances to be considered in determining the question of voluntariness. [Citation.]
 

 “The failure to allow defendant to consult counsel during or prior to his interrogation has also been held not to render a confession involuntary as a matter of law. [Citations.]
 

 “We must therefore look to the other facts surrounding the defendant’s interrogation which led to his confessions to determine whether they, giving proper weight to the two facts previously discussed, were such as to compel the conclusion that the confessions were involuntary.”
 

 And page 86; “The conclusion of the trial court with respect to the voluntary character of a confession will not be disturbed on appeal in the absence of a clear abuse of discretion. ’ ’
 

 In referring to section 851.5 of the Penal Code, on which defendant relies, the opinion in
 
 In re Newbern,
 
 55 Cal.2d 500 [11 Cal.Rptr. 547, 360 P.2d 43] at page 507, states: “In view of the foregoing we must conclude herein that petitioner was improperly denied the right to call a bail bondsman. But, as stated, there is no relief to which the petitioner is now entitled. There is no sufficient showing in this case that the denial of the right to call a bail bondsman resulted in the denial of a fair trial or prevented the petitioner from obtaining and presenting evidence of his innocence of the charges, as in the case of the denial of the right to call a physician for a blood sample.
 
 (In re Newbern, supra,
 
 175 Cal.App.2d 862 [1 Cal.Rptr. 80].) Nor are we concerned here with an irregularity in commitment, which requires the setting aside of the complaint.
 
 (People
 
 v.
 
 Elliot,
 
 54 Cal.2d 498 [6 Cal.Rptr. 753, 354 P.2d
 
 *116
 
 225].) It is manifest, however, that if the mandatory statute (Pen. Code, § 851.5) is to be meaningful, some standard of enforcement is necessary apart from a showing of a continuing prejudice suffered by an accused. The Legislature has provided for this in subdivision (b), as follows: ‘Any public officer or employee who deprives an arrested person of the rights granted by this section is guilty of a misdemeanor. ’ This, obviously, provides some deterrent to insure compliance with the statute as now interpreted by the courts.”
 

 Judgment and order denying motion for new trial affirmed.
 

 Fox, P. J., and Herndon, J., concurred.
 

 Appellant’s petition for a hearing by the Supreme Court was denied August 22, 1962.