[Crim. No. 8095. Second Dist., Div. Two. Feb. 20, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. ALLAN JACK RISLEY, Defendant and Appellant.

Patrick Coleman for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Vincent W. Thorpe, Deputy Attorney General, for Plaintiff and Respondent.

ASHBURN, J.—Defendant, Allen Jack Risley, was charged by information with four counts of violation of Penal Code section 228a, and one count of statutory rape, Penal Code section 261 subdivision (1). After a court trial defendant was convicted of the charge in count I of violating Penal Code section 288a and was found guilty of contributing to the delinquency of a minor, a lesser offense included in the charge of rape. He was found not guilty of the remaining three counts of violating Penal Code section 288a.

Defendant appeals from an order denying a new trial, order granting probation, and from the final judgment of conviction.

Three claims of error are advanced, namely, (1) introduction into evidence of photographs which were obtained by illegal search and seizure, (2) failure to require corroboration of testimony of a minor who willingly participated in sexual acts, in regard to the offense of contributing to the delinquency of a minor, and (3) that there was insufficient corroboration of accomplice testimony.

The victim in each instance of conviction was Diana, a 16-year-old girl. She and her friend Myrna, 15 years of age, saw appellant with his friends John Coogan and Harry Mehterian several times in January and February of 1961 at the Risley used car lot on Ventura Boulevard near Sepulveda Boulevard in Los Angeles.

On or about February 10, Diana and Myrna went to the Risley lot and met appellant and codefendant, Harry Mehterian. On that occasion Diana and Myrna participated with defendant and codefendant Mehterian in acts of sexual perversion in violation of Penal Code section 288a, i.e., fellatio.

Subsequently, on or about February 17, Diana and Myrna again went to the Risley lot. On this occasion appellant and codefendant John Anthony Coogan, were present. The two girls, defendant, and Coogan went to a trailer on the used car lot where Diana participated in like acts of sexual perversion with both defendant Risley and codefendant Coogan. Pictures were taken with a Polaroid camera show-

ing Diana engaging in such acts with defendant and with Coogan.

Myrna did not participate in the offense with either of the men on that day, but one of the defendants then handcuffed Myrna and suspended her from the trailer rafter, unbuttoned her blouse so that the upper part of her body was nude and took pictures of her.

At a later date Diana went with defendant to his father's apartment about one-half block away from the used car lot and there they again violated section 288a of the Penal Code.

About two weeks after this last event on March 7, 1961, Myrna talked to juvenile officers and told Sergeant Cain and Policewoman Hauck about the Polaroid camera. On that same day, at about 1 p. m., Officers Rondolone and Mercier and Sergeant Vausbinder went to the Risley lot to assist Sergeant Cain of juvenile division in the arrest of persons involved in sexual perversion. Sergeant Cain had told Officer Rondolone that there were lewd photographs and stories in the trailer at that location. The officers had no warrant for search or arrest.

On arriving at the lot, Officer Rondolone arrested defendant Mehterian and was informed that appellant was home sick in bed. His father was in the trailer at that time and was asked if a search could be made of the premises. He replied that the officers could go ahead. In drawers in the trailer the officers found nude photos. Defendant's father stated they belonged to defendant (appellant). Sergeant Vausbinder and Officer Mercier left to arrest defendant. Officer Rondolone stayed to talk to defendant Mehterian about the lewd acts with the girls. Defendant Mehterian admitted knowing the girls and seeing them on the lot.

Officer Rondolone took defendant Mehterian to the police station and booked him. At the station, Policewoman Hauck informed Rondolone that there was a Polaroid Land camera which had been used to photograph the criminal acts, a movie projector, rolls of lewd film, and photo albums in one of three railway express trucks which were on the used car lot.

Officer Rondolone returned to the lot at 2:35 p.m. He testified that he looked through the rear doors of the only truck van which was locked and he saw a Polaroid camera on the floor. He asked defendant's father for the keys but was told that he did not know where they were. Officer Rondolone told defendant's father what he could see through the door

and stated he would have to make a forcible entry if the keys were not found. Defendant's father replied, " 'you do what you think is necessary.' "

The father testified that the doors to the truck had flanges upon them and when the doors were closed that the flanges overlapped and it was impossible to see inside the truck. Photographs showing the flanges on the doors of the truck and the overlap of the flanges when the doors were closed were introduced into evidence. The father also testified that the truck was not on defendant's lot but on the land next to defendant's land. The truck in question belonged to a third party. The other two trucks were on the lot and were on consignment to defendant for sale. Defendant's father told the officer that the third truck did not belong to defendant.

Officer Rondolone broke the lock from the door of that van and entered. He found a Polaroid Land camera and the pictures received as exhibits 1, 2, 3, 5, and 6, which were in two albums marked "Family Albums." The pictures entered as exhibits 1 and 2 were shown to defendant that same day; they showed a man and a woman engaged in an act of fellatio. At that time defendant admitted that these were photographs of him and Diana.

Defendant's primary contention is that the photographs in question were obtained by an unlawful search and seizure and were therefore improperly admitted in evidence.

Respondent submits that the search and seizure were legal upon various grounds—among others, that the statements of the two girls, Myrna and Diana, that were related by a policewoman to the officer gave probable cause to break the lock on the truck and search it, and that the search and seizure were incident to a lawful arrest.

The officer testified that he saw the camera in the truck by looking through the one-fourth inch crack between the doors; therefore, he had probable cause to break in and search the truck. Defendant's father testified and introduced photographs which seem to show that the flanges on the doors overlapped, there was no crack between the doors and therefore the officer could not have seen inside the truck. Defendant contends that since the officer could not see the camera inside the truck he did not have probable cause to search. The trial court did not make a finding upon this conflicting testimony as the judge felt that the officer had probable cause to search the truck regardless of whether he could see inside. The judge felt that the girls' statements that the

camera and photographs were in one of the trucks were sufficient to give the officer probable cause. Those statements in and of themselves would not justify the search without a warrant unless the search was incident to a lawful arrest, and unless we find that the search was incident to a lawful arrest it would be in violation of defendant's constitutional rights and the camera and photographs seized would be inadmissible as evidence.

Defendant submits as a result of the United States Supreme Court's decision in *Mapp* v. *Ohio,* 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081], that all state courts are now bound by the federal decisions, by virtue of the supremacy clause, as to what is and what is not an unreasonable search and seizure. The Supreme Court held in *Chapman* v. *United States,* 365 U.S. 610 [81 S.Ct. 776, 5 L.Ed.2d 828], that where the search of a house is concerned the officers must have a warrant to make a legal search and seizure unless it is done as an incident to a lawful arrest. *Mapp* v. *Ohio, supra,* extends this requirement to state officers also.

 Following the *Chapman* and *Mapp* decisions, the search would be illegal unless incident to a lawful arrest. But it is not contended that the arrests of the defendant and his codefendant Mehterian were unlawful.

The general rule in such a situation has been stated many times in California. The Supreme Court pointed out in *People* v. *Winston,* 46 Cal.2d 151 [293 P.2d 40], that where the issue is whether a search and seizure is legal as incident to a lawful arrest, " '. . . [t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable.' " (P. 163.)

The issue then is whether the police officers here were acting unreasonably under the circumstances. "Searches and seizures incident to arrests are not unreasonable, but, in the absence of unusual circumstances, are entirely reasonable;[1] if made in good faith and limited to the seizure of evidence relating to the crime suspected or charged.[2]" (44 Cal.Jur.2d, Searches and Seizures, § 48, p. 375.) Here the defendant does not contend that the officers did not have good cause to arrest him or his codefendant Mehterian. There is no evidence that the officers did not act in good faith and the seizure of the evidence complained of unquestionably relates to the crime of which defendants were suspected.

---

[1] *Trowbridge* v. *Superior Court,* 144 Cal.App.2d 13 [300 P.2d 222].
[2] *People* v. *Winston,* 46 Cal.2d 151 [293 P.2d 40].

To support his claim that the search here was unreasonable, defendant relies upon cases to the effect that search must be conducted at the place of arrest (*Agnello* v. *United States*, 269 U.S. 20 [46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409]; *Hernandez* v. *Superior Court*, 143 Cal.App.2d 20 [299 P.2d 678]) in order to be upheld as an incident to a lawful arrest.

Here, defendant was arrested some miles away from where the search was conducted, but the search was made at the place of arrest of codefendant, Mehterian. The above cases do not hold that a search conducted at the place of arrest of one defendant is unreasonable and illegal as to a codefendant arrested elsewhere. It is common and reasonable for arrests and searches to be conducted at several places when multiple defendants are involved in a crime. (*People* v. *Brooks*, 154 Cal.App.2d 631, 635 [316 P.2d 435]; *People* v. *Allen*, 142 Cal. App.2d 267 [298 P.2d 714].)

Defendant also argues that the search was not *contemporaneous* with the arrest and is therefore not incident to a lawful arrest. He cites two cases in which the searches were respectively one and two days after the lawful arrest. (*Peoples* v. *Ransome*, 180 Cal.App.2d 140 [4 Cal.Rptr. 347]; *People* v. *Gorg*, 45 Cal.2d 776 [291 P.2d 469].)

These two cases are distinguishable from the instant one where the entire action from the first arrest through the successful search took less than two hours and was conducted without any delays. Officer Rondolone arrested codefendant Mehterian at 1 p.m. and started his search. Mehterian was booked at the station at 2 p.m., and Officer Rondolone was informed a few minutes thereafter by Policewoman Hauck that the camera, photographs, and some lewd films were in the back of one of the railway express trucks on the lot. Officer Rondolone returned to the lot at approximately 2:25 p.m. and shortly thereafter found the camera and photographs in one of the trucks. The officer was back at the station at approximately 3 p.m. The mere fact that the successful search was a second search is not sufficient to make it unreasonable as a matter of law.

In *People* v. *Felli*, 156 Cal.App.2d 123 [318 P.2d 840], a search of the site of the arrest a full hour after the defendant was taken to the station and booked was held lawful as incident to the arrest. The court said, at page 126: "The search of the car was made at the storage garage within an hour of the arrest. Such an interval of time would not under the circum-

stances of this case disconnect and disassociate the two events. It follows that the search of the car was legal as an incident of the arrest.''

*People* v. *Aleria,* 193 Cal.App.2d 352, 356 [14 Cal.Rptr. 162] : ''The following factors are usually determinative,— whether the search is actually incidental to the arrest in point of both time and place, whether arrest and search form part of a continuous transaction, whether the place of search is under the actual or probable control of the suspect.'' At page 359: ''It appears plain to us that whatever the factors of the particular problem may be, it is requisite to a valid search and seizure (absent consent) that there be shown a substantial nexus between the arrest and the search such that they may be held a continuous transaction.'' To same effect see, *People* v. *Stoner,* 205 Cal.App.2d 108, 113-114 [22 Cal.Rptr. 718]. The element of continuity of police activity cannot be said to be absent or broken in the instant case.

The search and seizure was reasonable and was within a time which should be considered to be contemporaneous with the arrest; therefore, the search and seizure were legal incidents to a lawful arrest.

As a second ground of appeal, defendant contends that his conviction of contributing to the delinquency of a minor, a lesser crime included in the charge of rape, Penal Code section 261 subdivision (1), was improper since the testimony of the minor was not corroborated.

Corroboration of the minor's testimony is not necessary for a conviction of contributing to the delinquency of a minor. (*People* v. *Lucas,* 16 Cal.2d 178, 180-181 [105 P.2d 102, 130 A.L.R. 1485] ; *People* v. *Stanley,* 78 Cal.App.2d 358, 361 [177 P.2d 968].)

In the case of *People* v. *Doetschman,* 69 Cal.App.2d 486 [159 P.2d 418], the court pointed out, on page 489, that: ''Section 702 of the Welfare and Institutions Code does not require corroboration, and none is necessary [citation]. . . . Under section 702 the minor involved is regarded as the victim and the offense there denounced is the harmful act to that victim with the resulting harm to society in general. By no stretch of the imagination can it be said, in a prosecution under that section, that the minor involved is a principal in the sense that he or she could be prosecuted for the same identical offense, within the meaning of section 1111 of the Penal Code. Such cases are analogous to statutory rape

cases in which it has been consistently held that the minor victim is not an accomplice.''

■ The character of the girl involved does not change the fact that no corroboration of her testimony is necessary. (*People* v. *Serrano,* 104 Cal.App.2d 453, 454-455 [231 P.2d 512].)

■ Defendant was found guilty of violating section 702 of the Welfare and Institutions Code on July 17, 1961. That section was repealed, effective September 15, 1961, and a new section 272, containing substantially the same language, was added to the Penal Code, effective the same day. Defendant was sentenced October 11, 1961. He contends that the above changes have altered the law so as to require corroboration of a minor's testimony, and that such changes in the law should be applied retroactively to his conviction.

The changes to which defendant refers were part of a general revision of juvenile court procedures. The only changes applicable to this crime were to transfer the trial from the juvenile court to the superior court and to renumber the sections. (36 State Bar J. 865; 37 State Bar J. 53.)

The general rule is stated as follows: *"Simultaneous Repeal and Re-enactment.*—When a repealing act embraces provisions of the repealed act, it continues in operation the re-enacted parts without interruption. All rights and liabilities that have accrued under the former act are preserved." (45 Cal.Jur. 2d, § 74, p. 594.)

There has been no change in the corroboration statute, Penal Code section 1111, and no change in the crime. Under the new statute Diana, the victim, is not made "one who is liable to prosecution for the identical offense," which would require corroboration under Penal Code section 1111. She could not be convicted of either rape upon herself or of contributing to her own delinquency.

Even if the change were as defendant contends, it would make no difference here, because defendant was tried and convicted before the revision. The fact that he was not sentenced until after the effective date thereof is immaterial. (See, Fricke on California Criminal Law (7th ed.) p. 2.)

■ Corroboration of the minor's testimony is not needed for a conviction of contributing to the delinquency of a minor.

■ Defendant's third contention is that his conviction on count I of violating Penal Code section 288a was improper. Defendant contends the testimony of the minor par-

ticipant in the crime was not sufficiently corroborated as required by Penal Code section 1111.

Officer Rondolone testified that defendant admitted that he recognized the pictures and identified himself as the person engaged in an act of sexual perversion with Diana.

Such an admission is sufficient corroboration of the testimony of an accomplice in this type of case. (*People* v. *Berger*, 185 Cal.App.2d 16, 20 [7 Cal.Rptr. 827] ; *People* v. *Mastrantuono*, 88 Cal.App.2d 178, 183 [198 P.2d 574] ; *People* v. *Triplett*, 70 Cal.App.2d 534, 537 [161 P.2d 397] ; *People* v. *Thomas*, 62 Cal.App.2d 416, 418 [144 P.2d 853].)

The testimony of Myrna is sufficient corroboration of Diana's testimony. She was present on the day on which the acts charged in count I took place but did not take part in this act of which defendant was convicted, nor any similar act on defendant or anyone else that day. The fact that she participated in similar acts on different dates does not make her an accomplice to the crime for which defendant was convicted. (*People* v. *Triplett, supra.*)

There was ample corroboration of all elements of the crime for which defendant was convicted.

The judgment is affirmed. Appeal from order denying new trial dismissed (Pen. Code, § 1237).

Fox, P. J., and Herndon, J., concurred.