STONER $v.$ CALIFORNIA.

No. 209.  Argued February 25, 1964.—
Decided March 23, 1964.

*William H. Dempsey, Jr.,* by appointment of the Court, 375 U. S. 805, argued the cause and filed briefs for petitioner.

*Arlo E. Smith,* Chief Assistant Attorney General of California, argued the cause for respondent. With him on the brief were *Stanley Mosk,* Attorney General of California, and *Albert W. Harris, Jr.* and *Michael J. Phelan,* Deputy Attorneys General.

*A. L. Wirin, Fred Okrand* and *Paul Cooksey* filed a brief for the American Civil Liberties Union of Southern California, as *amicus curiae,* urging reversal.

Mr. Justice Stewart delivered the opinion of the Court.

The petitioner was convicted of armed robbery after a jury trial in the Superior Court of Los Angeles County, California. At the trial several articles which had been found by police officers in a search of the petitioner's hotel room during his absence were admitted into evidence over his objection. A District Court of Appeal of California affirmed the conviction,[1] and the Supreme Court of California denied further review.[2] We granted certiorari, limiting review "to the question of whether evidence was admitted which had been obtained by an unlawful search and seizure." 374 U. S. 826. For the reasons which follow, we conclude that the petitioner's conviction must be set aside.

The essential facts are not in dispute. On the night of October 25, 1960, the Budget Town Food Market in Monrovia, California, was robbed by two men, one of whom was described by eyewitnesses as carrying a gun and wearing horn-rimmed glasses and a grey jacket. Soon after the robbery a checkbook belonging to the petitioner was found in an adjacent parking lot and turned over to the police. Two of the stubs in the checkbook indicated that checks had been drawn to the order of the Mayfair Hotel in Pomona, California. Pursuing this lead, the officers learned from the Police Department of Pomona that the petitioner had a previous criminal record, and they obtained from the Pomona police a photograph of the petitioner. They showed the photograph to the two eyewitnesses to the robbery, who both stated that the picture looked like the man who had carried the gun. On the basis of this information the officers went to the Mayfair Hotel in Pomona at about 10

---

[1] 205 Cal. App. 2d 108, 22 Cal. Rptr. 718.
[2] 205 Cal. App. 2d, at 116.

o'clock on the night of October 27. They had neither search nor arrest warrants. There then transpired the following events, as later recounted by one of the officers:

"We approached the desk, the night clerk, and asked him if there was a party by the name of Joey L. Stoner living at the hotel. He checked his records and stated 'Yes, there is.' And we asked him what room he was in. He stated he was in Room 404 but he was out at this time.

"We asked him how he knew that he was out. He stated that the hotel regulations required that the key to the room would be placed in the mail box each time they left the hotel. The key was in the mail box, that he therefore knew he was out of the room.

"We asked him if he would give us permission to enter the room, explaining our reasons for this.

"Q. What reasons did you explain to the clerk?

"A. We explained that we were there to make an arrest of a man who had possibly committed a robbery in the City of Monrovia, and that we were concerned about the fact that he had a weapon. He stated 'In this case, I will be more than happy to give you permission and I will take you directly to the room.'

"Q. Is that what the clerk told you?

"A. Yes, sir.

"Q. What else happened?

"A. We left one detective in the lobby, and Detective Oliver, Officer Collins, and myself, along with the night clerk, got on the elevator and proceeded to the fourth floor, and went to Room 404. The night clerk placed a key in the lock, unlocked the door, and says, 'Be my guest.' "

The officers entered and made a thorough search of the room and its contents. They found a pair of horn-

rimmed glasses and a grey jacket in the room, and a .45-caliber automatic pistol with a clip and several cartridges in the bottom of a bureau drawer. The petitioner was arrested two days later in Las Vegas, Nevada. He waived extradition and was returned to California for trial on the charge of armed robbery. The gun, the cartridges and clip, the horn-rimmed glasses, and the grey jacket were all used as evidence against him at his trial.

The search of the petitioner's room by the police officers was conducted without a warrant of any kind, and it therefore "can survive constitutional inhibition only upon a showing that the surrounding facts brought it within one of the exceptions to the rule that a search must rest upon a search warrant. *Jones* v. *United States,* 357 U. S. 493, 499; *United States* v. *Jeffers,* 342 U. S. 48, 51." *Rios* v. *United States,* 364 U. S. 253, 261. The District Court of Appeal thought the search was justified as an incident to a lawful arrest.[3] But a search can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest. *Agnello* v. *United States,* 269 U. S. 20.[4]

---

[3] The court reasoned that the officers had probable cause to arrest the petitioner prior to their entry into the hotel room; that they were not obliged to accept as true the night clerk's statement that the petitioner was not in his room; that "it may be reasonably inferred that they entered his room for the purpose of making an arrest," that their observation of the glasses in plain sight reasonably led them to a further search; and that in the circumstances the arrest and the search and seizure were "part of the same transaction." 205 Cal. App. 2d 108, 113, 22 Cal. Rptr. 718, 722.

[4] "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape

Whatever room for leeway there may be in these concepts,[5] it is clear that the search of the petitioner's hotel room in Pomona, California, on October 27 was not incident to his arrest in Las Vegas, Nevada, on October 29. The search was completely unrelated to the arrest, both as to time and as to place. See *Preston* v. *United States*, decided this day, *ante*, p. 364.

In this Court the respondent has recognized that the reasoning of the California District Court of Appeal cannot be reconciled with our decision in *Agnello*, nor, indeed, with the most recent California decisions.[6] Accordingly, the respondent has made no argument that the search can be justified as an incident to the petitioner's arrest. Instead, the argument is made that the search of the hotel room, although conducted without the petitioner's consent, was lawful because it was con-

---

from custody, is not to be doubted. See *Carroll* v. *United States*, 267 U. S. 132, 158; *Weeks* v. *United States*, 232 U. S. 383, 392. . . . But the right does not extend to other places." *Id.*, at 30. See also *Ker* v. *California*, 374 U. S. 23, 42, n. 13; *Lustig* v. *United States*, 338 U. S. 74, 79–80.

[5] Although some members of this Court have expressed the view that the statement in *Agnello* defining the permissible bounds of a search incident to arrest went too far, see, *e. g., Harris* v. *United States*, 331 U. S. 145, 155, 183, 195 (dissenting opinions); *United States* v. *Rabinowitz*, 339 U. S. 56, 68 (dissenting opinion), the *Agnello* holding as to what may *not* be searched—a house substantially removed geographically from the place of arrest at a time not substantially contemporaneous with the arrest—has never been questioned in this Court.

[6] "[T]he search cannot be justified as incident to the arrest 'for it was at a distance from the place thereof and was not contemporaneous therewith.' (Castaneda v. Superior Court, 59 A. C. 456, 459, 30 Cal. Rptr. 1, 3, 380 P. 2d 641, 643; Tompkins v. Superior Court, 59 A. C. 75, 77, 27 Cal. Rptr. 889, 378 P. 2d 113; People v. Gorg, 45 Cal. 2d 776, 781, 291 P. 2d 469.)" *People* v. *King*, 60 Cal. 2d 308, 311, 32 Cal. Rptr. 825, 826, 384 P. 2d 153, 155.

ducted with the consent of the hotel clerk. We find this argument unpersuasive.

Even if it be assumed that a state law which gave a hotel proprietor blanket authority to authorize the police to search the rooms of the hotel's guests could survive constitutional challenge, there is no intimation in the California cases cited by the respondent that California has any such law.[7] Nor is there any substance to the claim that the search was reasonable because the police, relying upon the night clerk's expressions of consent, had a reasonable basis for the belief that the clerk had authority to consent to the search. Our decisions make clear that the rights protected by the Fourth Amendment are not to be eroded by strained applications of the law of agency or by unrealistic doctrines of "apparent authority." As this Court has said,

> "it is unnecessary and ill-advised to import into the law surrounding the constitutional right to be free from unreasonable searches and seizures subtle distinctions, developed and refined by the common law in evolving the body of private property law which, more than almost any other branch of law, has been shaped by distinctions whose validity is largely historical. . . . [W]e ought not to bow to them in the fair administration of the criminal law. To do so would not comport with our justly proud claim of the procedural protections accorded to those charged with crime." *Jones* v. *United States,* 362 U. S. 257, 266–267.

---

[7] See *Roberts* v. *Casey,* 36 Cal. App. 2d Supp. 767, 93 P. 2d 654; *Fox* v. *Windemere Hotel Apt. Co.,* 30 Cal. App. 162, 157 P. 820; *People* v. *Vaughan,* 65 Cal. App. 2d Supp. 844; 150 P. 2d 964. "The mere fact that a person is a hotel manager does not import an authority to permit the police to enter and search the rooms of her guests." *People* v. *Burke,* 208 Cal. App. 2d 149, 160, 24 Cal. Rptr. 912, 919.

It is important to bear in mind that it was the petitioner's constitutional right which was at stake here, and not the night clerk's nor the hotel's. It was a right, therefore, which only the petitioner could waive by word or deed, either directly or through an agent. It is true that the night clerk clearly and unambiguously consented to the search. But there is nothing in the record to indicate that the police had any basis whatsoever to believe that the night clerk had been authorized by the petitioner to permit the police to search the petitioner's room.

At least twice this Court has explicitly refused to permit an otherwise unlawful police search of a hotel room to rest upon consent of the hotel proprietor. *Lustig* v. *United States,* 338 U. S. 74; *United States* v. *Jeffers,* 342 U. S. 48. In *Lustig* the manager of a hotel allowed police to enter and search a room without a warrant in the occupant's absence, and the search was held unconstitutional. In *Jeffers* the assistant manager allowed a similar search, and that search was likewise held unconstitutional.

It is true, as was said in *Jeffers,* that when a person engages a hotel room he undoubtedly gives "implied or express permission" to "such persons as maids, janitors or repairmen" to enter his room "in the performance of their duties." 342 U. S., at 51. But the conduct of the night clerk and the police in the present case was of an entirely different order. In a closely analogous situation the Court has held that a search by police officers of a house occupied by a tenant invaded the tenant's constitutional right, even though the search was authorized by the owner of the house, who presumably had not only apparent but actual authority to enter the house for some purposes, such as to "view waste." *Chapman* v. *United States,* 365 U. S. 610. The Court pointed out that the officers' purpose in entering was not to view waste but to search for distilling equipment, and concluded that to uphold such a search without a warrant would leave

tenants' homes secure only in the discretion of their landlords.

No less than a tenant of a house, or the occupant of a room in a boarding house, *McDonald* v. *United States,* 335 U. S. 451, a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures. *Johnson* v. *United States,* 333 U. S. 10. That protection would disappear if it were left to depend upon the unfettered discretion of an employee of the hotel. It follows that this search without a warrant was unlawful. Since evidence obtained through the search was admitted at the trial, the judgment must be reversed. *Mapp* v. *Ohio,* 367 U. S. 643.[8]

*It is so ordered.*

Mr. Justice Harlan, concurring in part and dissenting in part.

I entirely agree with the Court's opinion, except as to its disposition of the case. I would remand the case to the California District Court of Appeal so that it may consider whether or not admission of the illegally seized evidence was harmless error. *Fahy* v. *Connecticut,* 375 U. S. 85, does not require or justify the course which the Court takes. In *Fahy,* Connecticut at least had had the opportunity to decide the question of harmless error with respect to the illegally seized evidence there involved;

---

[8] The respondent has argued that the case should be remanded to let the California District Court of Appeal decide whether the admission of this evidence was harmless error. But the conviction depended in large part upon the jury's resolution of the question of the credibility of witnesses, and that determination must almost certainly have been influenced by the incriminating nature of the physical evidence illegally seized and erroneously admitted. There is thus at least "a reasonable possibility that the evidence complained of might have contributed to the conviction." *Fahy* v. *Connecticut,* 375 U. S. 85, 86.

here California has had no such opportunity.* For this Court to decide that question as an original matter is, in my opinion, incompatible with proper federal-state relations.

Accordingly, I would vacate the judgment below and remand the case to the California courts for further appropriate proceedings.

---

*The evidence against the accused included a confession of the crime charged. This Court refused to review the claim, contained in the petition for certiorari, that this confession had been involuntarily made. 374 U. S. 826, *ante*, p. 484.