**Frederick M. DAGAMPAT, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 19681.**

United States Court of Appeals
Ninth Circuit.

Oct. 28, 1965.

---

**246**

Frank Duncan, Los Angeles, Cal., for appellant.

Manuel L. Real, U. S. Atty., John K. Van de Kamp, Asst. U. S. Atty., Chief, Crim. Div., J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Crim. Div., Donald C. Smaltz, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS and BROWNING, Circuit Judges, and TAVARES, District Judge.

TAVARES, District Judge.

On July 15, 1964, the Federal Grand Jury for the Southern District of California returned a five-count indictment against appellant, charging violations of the federal narcotics laws. At the outset of his trial, appellant moved to suppress evidence, consisting of marijuana and marked money, that had been seized at the time of his arrest without a warrant.

The motion to suppress was based upon contentions raised by appellant on this appeal: that there was no reasonable cause to arrest appellant without a warrant, or, if there was reasonable cause, that the officers' method of entry into appellant's home was illegal; and that in either event the arrest was invalid and the subsequent search unlawful. Following the denial of his motion to suppress, appellant was found guilty on all counts by a jury.

The facts are not in dispute: Following directions of informant Rodriguez, on May 28, 1964, agent Nice drove Rodriguez (and another) to a certain street intersection in Los Angeles. Rodriguez told agent Nice that his "connection" (supplier of narcotics) told him to sit on a particular bus stop bench at a certain time. Nice gave to Rodriguez $225.00, consisting of bills whose serial numbers had previously been recorded. Rodriguez sat on the bus stop bench within view of agent Nice. In a few minutes agent Nice observed appellant drive up, stop near the bench, and have conversation with Rodriguez. Rodriguez then returned to agent Nice, and said that his connection didn't bring the narcotics with him, and that Rodriguez would have to go around the block to get it. Then Rodriguez got into the car driven by appellant, and ap-

pellant drove out of agent Nice's view. Agent Nice noted the description and license number of the car. About ten minutes later, Rodriguez returned and delivered narcotics to agent Nice.

Later that day agent Nice discovered that the car in question was registered to appellant, and further discovered that appellant had previously been arrested for narcotics violations, and had previously been convicted as an addict.

On June 24, 1964, agent Nice learned that Rodriguez had been arrested a week before, for selling narcotics to a Federal Agent. The arresting agent told Nice that during the transaction Rodriguez had met with a person whose appearance and physical description fit that of appellant.

At about 6:00 P.M. on June 24, Nice and other agents went to appellant's home, without a warrant, for the purpose of arresting him. As the officers approached the front of appellant's residence, appellant, who had been standing in the doorway, went inside and slammed the door. The agents ran up to the door and knocked; they heard a sound as if the door was being bolted; they hollered "Police officers!" and knocked more; they heard a voice call "What do you want?"; they answered: "Police officers, Dagampat, open the door!" and continued knocking.

The agents then heard sounds as if someone were running away from the door, and then they forced open the door. After doing so, they observed appellant running toward the bathroom; they ran after him, telling him to stop, that he was under arrest. He kept going, entered the bathroom and slammed the door. The agents forced open the bathroom door, and seeing appellant reaching toward the toilet, retrieved from the toilet a paper bag that contained marijuana. A search of the premises also produced $220.00 of the $250.00 that had been given to Rodriguez on May 17, 1964, in payment for heroin.

■ This court must apply California law to determine the validity of appel-

lant's arrest. In Ker v. State of California, 374 U.S. 23, 37, 83 S.Ct. 1623, 1632, 10 L.Ed.2d 726, the United States Supreme Court said:

> " * * * This Court, in cases under the Fourth Amendment, has long recognized that the lawfulness of arrests for federal offenses is to be determined by reference to state law insofar as it is not violative of the Federal Constitution."

citing Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332, United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210, and Johnson v. United States, 333 U.S. 10, 15, 68 S.Ct. 367, 92 L.Ed. 436.

This court has carefully considered the pertinent cases, including all cases cited by appellant and appellee. Appellant relies primarily on the case of Mangaser v. United States, 335 F.2d 971 (9 Cir. 1964), the facts of which bear some similarity to those in the case at bar. In the Mangaser case a special employee of the Bureau of Narcotics drove with an informant to make a purchase of narcotics, followed by a Buick containing other potential customers for narcotics. The employee observed an apparently disabled car whose occupants were Mr. and Mrs. Mangaser and their child. The informant walked up to the apparently disabled car and spoke to its occupants. The informant returned to the special employee and asked for the marked money for the purchase of heroin. While the informant was returning to the special employee's car, the car containing the Mangasers drove out of the special employee's view. The informant then left the view of the special employee, going in the same general direction as the car containing the Mangasers. Later the informant returned with narcotics, saying he had obtained his source's last supply and that the source had to go get some. No attempt was made to supply or even contact in any way the other potential customers for narcotics in the Buick that followed the special employee's car. When the Mangasers returned to their home later

that day, they were arrested without a warrant.

This court held that the foregoing facts did not provide reasonable cause for the arrest of the Mangasers without a warrant. The holding turned upon the fact that

"The officers had probable cause to believe that an offense had been committed, but * * * They had no probable cause to believe that these appellants had committed it." Page 974.

In the case at bar, however, the arresting officers had much more persuasive information, not only regarding the fact that an offense had been committed, but also that this appellant had committed it. Here there could be no ambiguity about who was referred to when the informant spoke of his "connection."

Here the informant described in advance the manner in which he would meet his connection; appellant alone (not a man, a woman and a child) appeared at the time and place, and in the manner so described. After meeting and talking to appellant alone the informant spoke to agent Nice of his connection in terms that unmistakably referred to appellant. Then the informant actually entered the car driven by appellant, rather than simply going off in the same general direction in which the suspect left the agent's view.

■ In Mangaser the arresting officers had no information concerning prior narcotics violations by the Mangasers, if any there were; here agent Nice had the highly significant information that appellant had previous narcotics arrests and several felony convictions, including one as an addict. As the Supreme Court said in Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697

"* * * that petitioner was a known user of narcotics made the charge against him much less subject to skepticism than would be such a charge against one without such a history."

That appellant was a known user of narcotics could reasonably have had an important bearing on the officers' interpretation of his conduct as they approached his home. In some circumstances failure of a suspect to open the door to his home upon demand by police officers may be considered ambiguous conduct; here, however, the abrupt entry of his home by appellant upon seeing the police officers approach, his apparent bolting of the door when the officers identified themselves and demanded entry, and his apparent retreat from the door, could hardly be considered anything but flight, or an attempt to destroy incriminating evidence. No such guilty conduct appeared in Mangaser.

On the contrary, in the Mangaser case facts appeared which largely dispelled any inference that the Mangasers were supplying narcotics: such as the fact that no attempt was made to supply or contact the potential customers in the Buick that followed the special employee's car.

This court has considered the possible technical lack of compliance by the arresting officers with the provisions of the California Penal Code, Section 844, which provides in part:

"To make an arrest * * * a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

It could fairly be said that the arresting officers here substantially complied with the requirements of that section, since they clearly identified themselves and their authority and demanded entry. Although they did not explicitly say that their purpose was to arrest appellant, appellant's behavior could certainly be said to indicate a knowledge on his part that such was their purpose.

As the district court for the District of Columbia aptly said in United States v.

Freeman, D.C.1956, 144 F.Supp. 669, 670:

> "[T]he announcement that the police were seeking to enter would give notice to a reasonable person that the purpose of seeking the entry is either to make an arrest or to make a search and that it was not just a social visit."

■ But even if the arresting officers failed to say explicitly that they had come to arrest appellant, the California courts have frequently excused literal compliance with the requirements of Section 844, in cases like this one, where the circumstances strongly indicate that the suspect is attemping to flee, or to destroy evidence. For example, in People v. Garcia, 187 Cal.App.2d 93, 98, 9 Cal.Rptr. 493, 498, in which the arresting officers, as in this case, said "Police officers, open the door", followed by sounds from within that indicated the suspects were planning flight, the court said,

> "The refusal to open the door upon the officers' demand, and the noise and comment from within indicating that the occupants were attempting to flee the premises, were ample reason for forcing entry.",

citing People v. Williams, 175 Cal.App.2d 774, 1 Cal.Rptr. 44, and People v. Barnett, 156 Cal.App.2d 803, 807, 320 P.2d 128.

The California courts seem particularly willing to relax the technical requirements of Section 844 in narcotics cases, because evidence of narcotics violations is so easily destroyed on short notice. In People v. Manriquez, 231 Cal.App.2d 725, 728, 42 Cal.Rptr. 157, 160, the court said:

> "We need not here determine how far in non-narcotic cases, a general course of conduct on the part of most law violators could be used as an excuse for ignoring the statutory mandate expressed in section 844. At least in cases of suspected narcotic violations, the evidence, in the form of narcotics or marked money, is of a kind susceptible of destruction in a matter of seconds."

In People v. Williams, 175 Cal.App.2d 774, 776, 1 Cal.Rptr. 44, 45, in which the arresting officers merely knocked on the door, and hearing retreating footsteps, forced their way in, the court said:

> " * * * . a knock on the door of a residence is not usually followed by the resident rushing to the bathroom. Bathrooms have been used so frequently as the means of making intoxicating liquor disappear, and successfully concealing the presence of other contraband articles, that police officers, who are at the door of a place where they have reason to believe that narcotics are to be had, act reasonably in forcing their way in, when the noise within led them to believe that the evidence they sought was being destroyed."

These cases often cite the much-quoted case of People v. Maddox, 46 Cal.2d 301, 306–307, 294 P.2d 6, 9, Cert. denied 352 U.S. 858, 77 S.Ct. 81, 1 L.Ed.2d 65, in which Justice Traynor, speaking for a unanimous court, said:

> "Suspects have no constitutional right to destroy or dispose of evidence and no basic constitutional guarantees are violated because an officer succeeds in getting into a place where he is entitled to be more quickly than he would had he complied with section 844. * * * We conclude, therefore, when there is reasonable cause to make an arrest and search, and the facts known to him before his entry are not inconsistent with a good faith belief on the part of the officer that compliance with section 844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains."

Neither Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332, nor Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, is of help to appellant; neither case involved circumstances such as in the case at bar which justify noncompliance with a re-

quirement that an arresting officer state his purpose before breaking doors.

In Miller the court said (357 U.S. page 309, 78 S.Ct. page 1196):

> "But whether the unqualified requirements of the rule admit of an exception justifying noncompliance in exigent circumstances is not a question we are called upon to decide in this case. The Government makes no claim here of the existence of circumstances excusing compliance."

And in Wong Sun, 371 U.S. at 483–484, 83 S.Ct. at 415:

> " * * * Here, as in Miller, the Government claims no extraordinary circumstances—such as the imminent destruction of vital evidence, or the need to rescue a victim in peril —see 357 U.S., at 309 [78 S.Ct. 1190, 1195]—which excused the officer's failure truthfully to state his mission before he broke in."

Further, in the more recent case of Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, the Supreme Court specifically considered Section 844 of the California Penal Code, and approved noncompliance by arresting officers who had far less justification for noncompliance than those in the case at bar. See the thorough discussion of this point in 112 U.Pa.L.R. 499.

■ Finally, appellant complains that the arresting officers had neither arrest warrant nor search warrant, although there was time enough in which to obtain a warrant. But California has no requirement that a warrant must be obtained if there is time to do so. In the recent case of People v. Stoner, 205 Cal. App.2d 108, 110, 22 Cal.Rptr. 718, 720, the court said:

> "Furthermore, it is conclusively established in this State that the failure to obtain a warrant, even though there be time to do so, does not make unreasonable an otherwise reasonable search."

citing People v. Winston, 46 Cal.2d 151, 162–163, 293 P.2d 40; People v. Domin-

guez, 144 Cal.App.2d 63, 65, 300 P.2d 194; and Lorenzen v. Superior Court, 150 Cal.App.2d 506, 512–513, 310 P.2d 180, 185. In the latter case the court upheld as valid an arrest and search made without a warrant of any kind, two weeks after the officers received the information on which the arrest was primarily based, saying:

> "We cannot say that * * * as a matter of law, permitting an elapse of approximately two weeks without getting a warrant, is without the 'flexibility' which the Rabinowitz case holds 'will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential' (339 U.S. at page 65, 70 S.Ct. at page 435), or unreasonable."

In the Winston case the California Supreme Court said:

> "Defendant *unavailingly* argues that here the police officers had ample time to procure a search warrant and therefore such warrant was required in order to validate the search and seizure of the incriminating evidence at the time of his arrest." (Emphasis supplied).

The court also quotes from the leading case of United States v. Rabinowitz, 339 U.S. 56, p. 66, 70 S.Ct. 430, p. 435, 94 L.Ed. 653, in which the United States Supreme Court held:

> "To the extent that Trupiano v. United States, 334 U.S. 699 [68 S.Ct. 1229, 92 L.Ed. 1663], requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable."

■ Since there was reasonable cause to arrest appellant without a warrant, the subsequent search and seizure were valid as incident to a lawful arrest, and appel-

lant's motion to suppress was properly denied.

Other contentions raised by appellant have been considered, and found to be without merit.

The judgment is hereby affirmed.