Filed 9/25/13  P. v. Solorzano CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056822 |
| v. | (Super.Ct.No. RIF1102047) |
| ALBERTO SOLORZANO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Bernard Schwartz, Judge.  Affirmed.

Jeanine Grimmond Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael T. Murphy and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Alberto Solorzano was convicted by jury trial of possession of methamphetamine and possession of drug paraphernalia. (Health & Saf. Code, §§ 11377, subd. (a), 11364.1.) His appeal challenges the denial of his motion to suppress evidence. (Pen. Code, § 1538.5.) We affirm.

### STATEMENT OF FACTS

We may in general confine ourselves to the circumstances surrounding the seizure in question. It was stipulated that there was no warrant for the entry of the home or any search.

Officer Scott Anderson was responding to a report of a subject who was combative and argumentative with family members. He observed defendant in the front yard area of a residence. As defendant appeared agitated, the officer detained him in the back of his police vehicle while he investigated the matter.[1]

Officer Anderson approached the front of the residence and made contact with a man who identified himself as Mario Solorzano, defendant's father. The father told the officer that his son, defendant, was currently living in his front living room and consented to the officer entering the residence so he could look around. The officer testified that "[t]he front door opens up into the main living room of the residence. There's a couch, a computer desk, a table, all in the front room." Defendant's father informed the officer

---

[1] This detention is not the subject of the appeal.

that his son was "staying and sleeping" in the room. The officer saw a hypodermic syringe in a small plastic baggie on top of a cabinet by the couch.**2**

On cross-examination, the deputy testified that there was also clothing or dirty laundry in the area, as well as a computer table which defendant's father indicated belonged to defendant. Defendant's father told him that no one else had "been in the living room."**3**

The trial court denied the motion to suppress. Defendant's position on this appeal is that his father's consent was ineffective because the living room was his personal living space. We disagree and affirm the judgment.

DISCUSSION

In reviewing issues relating to the seizure and suppression of evidence under the Fourth Amendment, we apply federal constitutional standards. (*People v. Troyer* (2011) 51 Cal.4th 599, 605.) Our review of the trial court's legal conclusions is de novo. (*People v. Walker* (2012) 210 Cal.App.4th 1372, 1380.)

Although the warrantless entry into a private home is presumptively unreasonable (see *People v. Hawkins* (2012) 211 Cal.App.4th 194, 199), a well-established exception

---

**2** The syringe was the subject of the "drug paraphernalia" charge. Evidence at trial showed that the baggie also contained a white powder, which proved to be methamphetamine.

**3** The first formulation of the question by defense counsel was whether defendant's father told the officer that defendant "had exclusive control of that particular area; correct?" The officer attempted to clarify: "Exclusive? Meaning like he had full control over that and nobody else did?" Defense counsel then asked "That he was the only one living there; correct?" The officer replied "Correct."

3

to this principle arises when consent to enter is given by one authorized to give it.  (*Ibid.*; *Schneckloth v. Bustamonte* (1973) 412 U.S. 218, 219.)  As defendant acknowledges, law enforcement personnel may also rely on consent given by one who is reasonably believed to have such authority.  (*Illinois v. Rodriguez* (1990) 497 U.S. 177, 186 (*Illinois*).)  The seizure of contraband or incriminating evidence in plain view following a consensual entry is, of course, permitted.  (*People v. Superior Court (Chapman)* (2012) 204 Cal.App.4th 1004, 1012-1013.)

In arguing that his father did not have authority to consent to the officer's entry into the living room, defendant analogizes his occupancy of the room to that of a tenant in a boardinghouse or occupant of a motel room.  (See, e.g., *Chapman v. United States* (1961) 365 U.S. 610, 616-618; *Stoner v. California* (1964) 376 U.S. 483, 488-489; see also *People v. Superior Court (Walker)* (2006) 143 Cal.App.4th 1183, 1200-1201.)  We find the analogy inapt because the evidence does not support the necessary predicate of exclusive control.

It has been held repeatedly that even an adult child's bedroom in the parental home is subject to the joint control of the parent, whose consent to enter or search is sufficient, unless there is clear evidence that the child has *exclusive* control over the room.  (See *People v. Oldham* (2000) 81 Cal.App.4th 1, 10.)  A fortiori, where the child simply dosses down on the couch in what is typically a common living area accessible to all residents, exclusive control is not established by the mere presence of possessions in the room.

4

Although the officer testified that defendant's father told him that defendant was the only one "living" in the living room, he did *not* testify that he was told that defendant had "exclusive control" over the room in the sense that he had the power to forbid others to enter.**4**  In the absence of any such evidence, we decline to assume such control. Obviously defendant's father felt perfectly entitled to enter the room in order to open the front door, and to allow the officer to enter.  It would be an unusual case indeed in which a person could persuasively claim exclusive control over a room into which arriving visitors would normally be welcomed, and which the homeowner would be required to traverse in order to respond to knocks or a ringing doorbell.**5**

Furthermore, if it were necessary to reach the point, nothing in the circumstances known to the officer when defendant's father consented to his entry suggested that the latter did not have authority to so consent.  (See *Illinois, supra*, 497 U.S. 177, 186.)

Accordingly, the motion to suppress was properly granted and the judgment is affirmed.

---

**4** Defendant's repeated assertions that defendant's father told the officer that defendant had "exclusive control" are simply erroneous.  As our quotation of the actual testimony above reflects, the officer's response of "[c]orrect" was to a different question.

**5** We do not say that there could never be a reasonable expectation of privacy in such a room; for example, if the front door bore a sign "Use back door," and there was evidence that passageways leading from the living room were closed or barricaded, one could assume that the occupant was asserting a right to exclusive control and concomitant privacy.  That, of course, is not this case.

5

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
Acting P. J.

We concur:

KING
J.

CODRINGTON
J.

6