604 So.2d 496 (1992)
Eric Brandon MORSE, Appellant,
v.
STATE of Florida, Appellee.
No. 90-1876.
District Court of Appeal of Florida, First District.
June 11, 1992.
Rehearing Denied July 31, 1992.
*498 Nancy A. Daniels, Public Defender, Steven A. Been, David A. Davis, and Phil Patterson, Asst. Public Defenders, for appellant.
Robert A. Butterworth, Atty. Gen., Bradley R. Bischoff, Asst. Atty. Gen., for appellee.
SHIVERS, Judge.
Appellant Morse challenges the trial court's denial of his motion to suppress evidence obtained by the police during a warrantless search of his motel residence. Because the evidence taken is the fruit of a warrantless search, and the facts do not support the state's reliance on any established exception such as consent, common authority, or abandonment, we are compelled to reverse the order because the evidence is inadmissible.
Appellant was charged by information in Case No. 90-4 with the burglary of a restaurant (Count One) in Destin, Florida, on December 27, 1989, in violation of section 810.02(1) and (3), Florida Statutes (1989), and with resisting or obstructing without violence an investigating officer (Count Two), on the same day, in violation of section 843.02, Florida Statutes (1989). By affidavits, he was charged with violations of probation and community control based on the arrest and charge relating to burglary of a structure and on the failure to remain confined at his approved residence, Destination Motel, Room 11, on December 29, 1989. On April 4, 1990, an evidentiary hearing was held on the charge of violation of community control and probation in Case Nos. 89-6 and 89-71 through 89-77. Defense counsel orally moved to suppress evidence based on 1) the warrantless seizure of tennis shoes from appellant's room on December 27, 1989, and 2) the warrantless search of appellant's room on December 29, 1989. The trial court denied the motions to suppress and found violations of community control and probation.
Proceedings relating to the burglary and resisting arrest charges were held on April 25, 1990, when the trial court considered an oral motion to suppress the same evidence covered at the violation hearing. The court considered the testimony presented at the violation hearing and heard testimony from appellant. The parties stipulated the motion to suppress is dispositive of Count One (burglary) in Case No. 90-4. After the motion was denied, appellant entered a plea of nolo contendere to both counts, specifically reserving the right to appeal the denial of the motion to suppress. On May 23, 1990, appellant was sentenced to five years in prison on Count One, and to one year in prison on Count Two, to run concurrently. The trial court entered orders as to the *499 violations of the conditions of probation and community control.
The issues on appeal involve the denial of the motion to suppress, the dispositiveness of that motion, and the finding of a violation of the conditions of community control. We find the motion to be dispositive of the burglary charge. Accordingly, we reverse the burglary conviction in Case No. 90-4, vacate the orders finding appellant to have violated the conditions of his supervision in Case Nos. 89-6 and 89-71 through 89-77, and remand for the trial court to reinstate appellant to community control.

FACTS
Deputy sheriffs investigating the burglary observed shoeprints in the sand on the western side of the restaurant leading, with gaps where the pavement was, to the Destination Motel, Room 11. Deputies Ron Gay and Greg Gaddis testified that on December 27, 1989, they knocked at Room 11 and appellant invited them in. After Gay saw a pair of tennis shoes on the floor of the room and picked them up, appellant agreed Gay could examine them. Gay testified that at that time, he believed the shoe size and tread pattern matched the prints leading from the restaurant to the motel room. After appellant denied them permission to look in the kitchen, the officers left with the shoes. Subsequently, it was determined the shoes matched the shoeprints leading from the burglary site.
Twenty or thirty minutes after the officers left appellant's room, Gay observed him leaving Room 11 and carrying something under his jacket. He followed appellant into a nearby wooded area. Seeing the officer, appellant threw down a jar of coins and ran off, ignoring Gay's shouted order to stop. The next day, December 28, 1989, Deputy William Collette twice went to the Destination Motel looking for appellant. Collette testified he had probably spoken to a man he believed was the "manager" of the motel. As to who was running the motel, appellant testified he had lived in Room 11 for about 1 1/2 months and had an agreement with "the manager, Dorothy," to pay semi-monthly rent. Appellant testified he was current in his rent in December 1989. Both Dorothy and her husband, Frank, are referred to as "manager" in the record, but the record contains no written rental agreement.
Early on December 29, 1989, Collette questioned appellant at a police department substation. Around 1:30 or 1:45 A.M., after returning to the motel from talking to Collette, appellant was confronted by Frank (Dorothy's husband), to whom Deputy Collette had spoken the day before. Frank was intoxicated and blamed appellant for causing trouble around the motel. He gave appellant 30 minutes to pack and leave, upon a threat to call the police and have him arrested. Appellant testified he thought he had no choice other than to pack and leave immediately, and he did not believe he could contact his community control officer at such an early hour of the morning.
About 10-15 minutes after appellant left the police substation, Frank called Deputy Collette to inform him appellant was being evicted immediately for creating a disturbance and being behind in his payment of rent. Collette asked Frank not to evict him yet because Collette wanted to question appellant.
Collette then went to the motel, where Frank told Collette appellant had loaded his belongings into a girlfriend's car and had left. Collette accepted Frank's invitation to look in appellant's room. According to the testimony, his purpose for going into Room 11 was to look for evidence of the burglary. He saw two cable converter boxes, one of which had the same serial number as a box issued by the cable television company to the burglarized restaurant. Collette acknowledged it would have been simple to ask Frank to secure Room 11 while a search warrant was obtained, but Collette did not have probable cause to believe items from the burglary would be in the room. Collette said he did not think he necessarily had probable cause for a search warrant, but he thought he had probable cause for an arrest. He testified he thought the tenancy had been terminated *500 and that appellant had vacated the room, with no intent to live there anymore.
In fact, appellant had taken certain of his items, including some of his clothes, a rug, and dry food. He testified it had taken 15-20 minutes for him to pack, but he had not been able to remove everything from the room because he was loading his belongings into a small car. The items remaining in the room included jeans, T-shirts, a jacket, drapery, sheers, a couch, and refrigerated food. Appellant intended to borrow a truck and return for the remainder of his personal property. No testimony was given as to whether the 30-minute deadline had expired when Frank led Deputy Collette into Room 11. The violation affidavits state appellant was arrested "on or about December 29, 1989, in Okaloosa County, Florida," but no evidence was presented at the hearing as to the circumstances or location of the arrest.

MOTION TO SUPPRESS
The facts are strikingly similar to those in Blanco v. State, 438 So.2d 404 (Fla. 4th DCA 1983), where the two defendants had executed a series of written agreements that were tantamount to a year's lease and were in force when the landlord allowed the police to make a warrantless search of the apartment and to seize contraband. Following convictions of armed robbery and armed burglary, the defendants argued on appeal that the apartment had been subject to an illegal search and seizure and that the motions to suppress evidence should have been granted. The Fourth District Court rejected the state's argument that the provisions of the rental agreement giving the landlord the right to enter also gave him the right to invite the police. Even the landlord's right to enter was a qualified one of "reasonable access for inspection purposes and in order to spray for infestations. Inviting the police to enter and search the apartment is another matter altogether." Id. at 405; see Sheff v. State, 301 So.2d 13, 16 (Fla. 1st DCA 1974), aff'd, 329 So.2d 270 (Fla. 1976); McGibiany v. State, 399 So.2d 125 (Fla. 1st DCA 1981) (even if assistant motel manager had right to enter room to investigate suspected fraudulent occupancy, constitutional limits on unreasonable warrantless search applied to an accompanying off-duty policeman, requiring reversal of conviction). As in the case sub judice, the defendants in Blanco had been orally told to deliver up the premises, but no written notice had been given in accordance with the requirements of the Florida Landlord Tenant Law. Although the defendants were three days late on their monthly rent, the appellate court held that "falls short of the kind of occurrence that would permit the landlord to invite the police to search." See 438 So.2d at 405. The denial of the motion to suppress was reversed, because a warrant should have been obtained.
In reviewing the order denying appellant's motion to suppress evidence, we must view the evidence in the light most favorable to sustain the trial court's ruling. Watts v. State, 578 So.2d 437, 438 (Fla. 1st DCA 1991). We note, however, that the state has not distinguished Blanco from the instant facts. The manager of the Destination Motel could not terminate appellant's tenancy on the spot by an immediate "verbal eviction," for neither creating a disturbance nor being behind in rental payments invests the landlord with the legal right to terminate a tenancy without prior written notice. Section 83.56(2)(a), Florida Statutes (1989), authorizes a landlord to terminate a tenancy for "continued unreasonable disturbance" by giving seven days' written notice. Section 83.56(3), Florida Statutes (1989), makes nonpayment of rent the basis for termination, but only after three days expire, following delivery of the required written notice. There was no testimony as to the duration of appellant's tenancy. If appellant and the motel manager did not agree to a specific length of tenancy, then under section 83.46(2), Florida Statutes (1989), the periods for which rent was payable determined the duration of tenancy. Since appellant paid rent semi-monthly, his tenancy was for two-week periods. Even the shorter week-to-week tenancy requires no fewer than seven days' written notice under section 83.57, Florida Statutes (1989), so it is clear appellant's *501 tenancy was not terminated by Frank's 30-minute verbal warning.
An officer cannot always assume an invitation to enter a room is necessarily authorized by the rightful occupant. Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); United States v. Sledge, 650 F.2d 1075 (9th Cir.1981). Under Blanco and the cited portions of the Landlord Tenant Law, Deputy Collette was not automatically entitled to rely on Frank's invitation to conduct a warrantless search, unless appellant had given up his reasonable expectation of privacy in the premises. See Wassmer v. State, 565 So.2d 856, 857 (Fla. 2d DCA 1990) (denial of motion to suppress was error, where drug paraphernalia was discovered because motel security guard with passkey admitted officers into room occupied by defendant). It is not clear from the record whether Frank was even the manager or co-manager of the Destination Motel, as appellant testified he paid rent to Frank's wife, Dorothy, the manager. Neither is it clear whether appellant was given even the 30 minutes promised by Frank, although the requirements of chapter 83, Florida Statutes, would still apply. Accordingly, the so-called eviction, by the intoxicated purported manager, does not justify the unwarranted search of Room 11 by the police under these circumstances.
In Sheff, 301 So.2d at 13, we considered the trial court's denial of a motion to suppress evidence. While the defendant was temporarily absent from his motel room, the maid admitted herself for the limited purpose of cleaning the room, in accordance with ordinary motel operating practices. She reported to the manager that a "green-like" material thought to be marijuana was lying loose, in plain view, in an open suitcase. After viewing the material, the manager called a relative who was a captain in the sheriff's department, and invited him into the defendant's room to see the contraband. The defendant returned and, noticing police cars in the motel parking lot, threw a plastic bag from his car and quickly drove away. After a police stop shortly thereafter, the defendant was seen "fiddling around on the floor of his car." Id. at 15. We held that, even if the motel manager might have had the right to enter the room based on the maid's report of a suspicious looking material, "he had no legal right to extend an invitation of entry to the police." Because the officer saw nothing in plain view until he came into the room, his initial entry was unlawful, even though subsequent events, unconnected with the initial illegality, were sufficient to provide probable cause for arrest. Id. at 16-18.
Warrantless searches are per se unreasonable unless conducted within an established exception such as personal consent, abandonment, or consent by a third party with common authority over the premises. Engle v. State, 391 So.2d 245 (Fla. 5th DCA 1980). We find nothing in the record to indicate appellant individually consented to the December 29, 1989, search of Room 11.
The state relies on several "abandonment" decisions to argue appellant had relinquished his interest in the property and no longer had a reasonable expectation of privacy in the premises at the time of the search. "Strict property concepts" such as the statutory notice requirement are not necessarily dispositive of the illegality of a search if an abandonment occurred, even if the former resident retains the lawful right of possession. See Bloodworth v. State, 233 Ga. 589, 212 S.E.2d 774 (1975); see also United States v. Parizo, 514 F.2d 52 (2d Cir.1975) (no legitimate expectation of privacy when access to room is no longer exclusively guest's, even though guest's access remains).
However, Florida law governing the duration and termination of a tenancy is relevant to the question whether appellant retained a legitimate privacy interest, for Fourth Amendment purposes, with respect to the remaining personal belongings in Room 11. See Rakas v. Illinois, 439 U.S. 128, 143 n. 12, 99 S.Ct. 421, 430-31 n. 12, 58 L.Ed.2d 387, 401 n. 12 (1978); United States v. Wilson, 472 F.2d 901 (9th Cir.1972), cert. den., 414 U.S. 868, 94 S.Ct. 176, 38 L.Ed.2d 116 (1973) (absent justifiable *502 expectation of privacy, warrantless search was proper, although state law arguably might have given tenant a continued interest in premises regardless of intent to abandon); Sledge, 650 F.2d at 1082.
We find United States v. Rahme, 813 F.2d 31, 34 (2d Cir.1987), to be limited to a situation, unlike here, where the defendant's rental period had expired or was lawfully terminated. Decisions in which abandonment occurred typically involve a clearer indication the former occupant voluntarily left with no intention of returning. See, e.g., Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960) (defendant completely packed and took belongings, vacated hotel room, paid bill and apparently checked out, leaving incriminating evidence in wastebasket); Jones v. State, 332 So.2d 615 (Fla. 1976) (murder suspect hurriedly left town on obviously one-way trip and was deemed to have abandoned shack). The defendant in United States v. Manning, 440 F.2d 1105 (5th Cir.), cert. den., 404 U.S. 837, 92 S.Ct. 125, 30 L.Ed.2d 69 (1971), left behind no personal belongings or other items of value to suggest a continuing interest in the premises, and garbage and decayed food indicated an abandonment of the premises. That appellant's residence was a motel room rather than a private dwelling does not diminish his constitutional rights, since the record shows he was a lawful tenant at the time of the incident and was not evicted in accordance with the applicable statutes. See Sheff, 301 So.2d at 16.
The defendant in Paty v. State, 276 So.2d 195 (Fla. 4th DCA 1975), rented a motel room and was observed smoking marijuana there. When told the police had been called, Paty ran from the room with a foot locker and disappeared into a nearby home. He left his motorbike outside the motel room and his jacket and helmet inside. The police searched the room and found marijuana. The Fourth District Court rejected the finding of abandonment. Id. at 197.
When Frank and Deputy Collete entered Room 11, it should have been immediately evident appellant had left some of his belongings there. We find no intent on appellant's part to relinquish his control over the room prior to removing his personal items such as clothing and furnishings. Accordingly, the warrantless search here cannot be justified on the basis of the abandonment exception. See Salamy v. State, 509 So.2d 1201 (Fla. 1st DCA 1987) (reversing denial of motion to suppress cannabis, where armed landlord had suddenly forced defendant to leave house, personal belongings and a vehicle were left behind, landlord invited sheriff's investigator to inspect premises two days later, and evidence failed to show reasonable belief of abandonment or consent); Lang v. State, 475 So.2d 1354 (Fla. 5th DCA 1985); Blanco.
The state contends alternatively that the warrantless search is saved by Deputy Collette's good-faith belief Frank lawfully consented for him to enter appellant's room, based on Frank's remarks that he had evicted appellant, and his invitation to enter the room. See, e.g., Sledge, 650 F.2d at 1075 (sustaining search and seizure where drug agent reasonably believed defendant had abandoned premises, apartment landlord consented to entry, and agent "acted with care" to determine landlord's authority and reviewed facts indicating abandonment). However, because the purported eviction was invalid under Florida law, under these particular facts the police cannot rely on the good-faith exception to the exclusionary rule, created by United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and Illinois v. Krull, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987).
We believe the Leon exception is inapplicable where, as here, an officer claims only that he made a reasonable but mistaken interpretation of the scope of his search authority under a particular valid statute. See 1 La Fave, Search and Seizure § 1.3(g) (2d ed. 1987) and § 1.3(h) (1991 Supp.). Collette testified he knew Frank had given appellant only 30 minutes' verbal notice to leave. Under the particular and unusual facts of this case, we find no reason to expand the good-faith exception in the context of a warrantless search. See United States v. Milian-Rodriguez, 759 F.2d 1558 *503 (11th Cir.), cert. den., 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 112 (1985); United States v. Baker, 894 F.2d 1144, 1147 (10th Cir.1990); United States v. Curzi, 867 F.2d 36, 44 (1st Cir.1989); United States v. Winsor, 846 F.2d 1569, 1579 (9th Cir.1988). Cf. United States v. De Leon-Reyna, 930 F.2d 396, 399 (5th Cir.1991).
The state contends that Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), supports Deputy Collette's decision to search Room 11. The Fourth Amendment's prohibition of warrantless searches of a person's residence does not apply where a third party with common authority over the premises gives voluntary consent to enter. See United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). "Common authority" arises from "mutual use of the property by persons generally having joint access or control for most purposes." Rodriguez, 497 U.S. at 177, 110 S.Ct. at 2797, 111 L.Ed.2d at 156, quoting Matlock, 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7, 39 L.Ed.2d at 250 n. 7. The state did not meet its burden of establishing that, at the time of the December 29, 1989, search, either Frank or his wife had such authority, see Blanco, or even reasonably appeared to have the authority under the circumstances. See United States v. Dunkley, 911 F.2d 522, 525 (11th Cir.1990), cert. den., ___ U.S. ___, 111 S.Ct. 987, 112 L.Ed.2d 1071 (1991).
Rodriguez holds that, even where the invitation to enter and search premises is explicit and based on assertions of apparent consent, "the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry." See 497 U.S. at 177, 110 S.Ct. at 2801, 111 L.Ed.2d at 161. The determination of consent to enter is to be judged by an objective standard: Would the facts available to Deputy Collette, at the time of the search, warrant a person of reasonable caution to believe the consenting party, Frank, had authority over the specific premises? See Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); United States v. Ruiz, 761 F. Supp. 122, 123-24 (S.D.Fla. 1991). If that were the case, it would constitute an exception to the exclusionary rule. See Florida v. Jimeno, ___ U.S. ___, ___, 111 S.Ct. 1801, 1803-04, 114 L.Ed.2d 297 (1991); Rodriguez. We find the surrounding circumstances were such that a reasonable person would doubt that Room 11 was "abandoned," or that Frank was authorized to evict appellant without proper notice. Rodriguez provides that further inquiry was necessary, in the absence of actual authority, especially since Deputy Collette is presumed to be familiar with the applicable law. See Rodriguez, 497 U.S. at 177, 110 S.Ct. at 2801, 111 L.Ed.2d at 161.
Arguendo, if the entry and search were based on a mistake of fact alone, the search still would be unlawful. That is because "Rodriguez thus applies to situations in which an officer would have had valid consent to search if the facts were as he reasonably believed them to be." United States v. Whitfield, 939 F.2d 1071, 1074 (D.C. Cir.1991) (emphasis supplied). We find that, at the very least, the officer was faced with the kind of ambiguous situation that, pursuant to Rodriguez and Whitfield, should have foreclosed him from proceeding into Room 11 without additional inquiry. No such further inquiry appears in the record. Cf. Sledge, 650 F.2d at 1075.
The record demonstrates Deputy Collette operated under a mistake of law as well, his apparent belief appellant could be evicted upon 30 minutes' verbal notice. Nothing in Rodriguez or in the instant record persuades us that the officer's good-faith reliance was objectively reasonable, with regard to either Frank's contention that appellant had completely moved out, or to the belief that the "instant" eviction authorized Frank to consent to the warrantless search of appellant's room by the police. See Blanco. Accordingly, the state failed to meet the burden of establishing that Frank had common authority, see Rodriguez, or joint access or control for most purposes. Matlock; Blanco.

*504 DISPOSITIVENESS OF STIPULATION
The stipulation between the parties provides "the Motion to Suppress, heard April 4 and 25, 1990, is dispositive of the issues in Count I, Burglary ..." In the trial court, defense counsel sought to suppress evidence based on two separate incidents of alleged Fourth Amendment violation: 1) the December 29, 1990, search already discussed, and 2) the December 27, 1990, warrantless seizure of tennis shoes. On appeal, appellant argues only that suppression of the fruit of the December 29 search, the cable converter box, is dispositive of the burglary charge.
With the cable box suppressed, the evidence against appellant would be as follows: 1) the morning after the burglary, shoeprints led from the site of the crime to Room 11; 2) shoes found in Room 11 match those shoeprints; and 3) a few minutes after he was interviewed by deputies, appellant ran from Deputy Gay and threw down a jar of coins not shown to be related to the burglary. We find this evidence is insufficient to avoid a judgment of acquittal.
Neither presence at the scene of a crime nor presence coupled with flight or other equivocal conduct is sufficient of itself to establish guilt. Agee v. State, 522 So.2d 1044 (Fla. 2d DCA 1988); J.W. v. State, 467 So.2d 796 (Fla. 3d DCA 1985); J.O. and R.G. v. State, 384 So.2d 966, 967 (Fla. 3d DCA 1980). The circumstantial evidence here is less suggestive than in Palmer v. State, 483 So.2d 496 (Fla. 1st DCA), rev. den., 494 So.2d 1152 (Fla. 1986), where Brown, an inmate, was stopped as he left the prison pharmacy area during the period when it was burglarized. He was not authorized to be in that area then, nor did he explain his presence there. We reversed the conviction because the circumstantial evidence was not inconsistent with any reasonable hypothesis of innocence. Mere suspicion was not a basis for conviction. See 483 So.2d at 497. See Owen v. State, 432 So.2d 579, 581 (Fla. 2d DCA 1983) (facts must eliminate all reasonable hypotheses of innocence, not merely create a strong probability of, and be consistent with, guilt); Rager v. State, 587 So.2d 1366, 1369 (Fla. 2d DCA 1991); W.B. v. State, 554 So.2d 577 (Fla. 3d DCA 1989). Even if the shoeprints leading from the restaurant to Room 11 could be said to show appellant was at the scene of the burglary, that fact, along with his later running from Officer Gay, is insufficient to exclude a reasonable hypothesis of innocence. M.F. v. State, 549 So.2d 225 (Fla. 3d DCA 1989). Since we find suppression of the cable converter box is dispositive, the burglary conviction in Case No. 90-4 is reversed, and the cause remanded for appellant to be discharged from further liability as to that charge.

VIOLATION OF CONDITIONS
The community control officer filed affidavits charging appellant with two violations of conditions of probation and community control: 1) the December 29, 1989, arrest and charge relating to the burglary, and 2) the failure to remain confined at his approved residence on December 29, 1989, "as evidenced by his arrest on December 29, 1989." The trial court's orders likewise found violations of both community control and probation in Case Nos. 89-6 and 89-71 through 89-77. Appellant asserts, and we agree, that only the alleged violations of community control, not of probation, should have been considered. That is because he had been placed on community control for two years in each of the above cases, with three years' probation to follow, and was still on community control at the time of the alleged violations.
The exclusionary rule applies in revocation proceedings, so that suppression of the fruit of the December 29 search and discharge of the burglary conviction eliminates the first alleged violation of community control. See State v. Cross, 487 So.2d 1056 (Fla.), cert. den., 479 U.S. 805, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986); Robinson v. State, 547 So.2d 321 (Fla. 5th DCA 1989); Kelly v. State, 536 So.2d 1113, 1114 (Fla. 1st DCA 1988).
As to the second violation, the affidavit implies the arrest occurred somewhere other than the approved residence, *505 but no evidence was presented at the hearing as to the circumstances of appellant's arrest. The only non-hearsay evidence presented at the violation hearing, that appellant was not at his residence at any point on December 29, 1989, other than his own testimony, is Deputy Collette's testimony that he entered the room and found a cable converter box. That testimony is the fruit of the warrantless search and should not have been considered. Appellant's testimony is that he felt he had no choice other than to pack up and leave immediately. Since that evidence does not establish a willful violation of the conditions of community control, vacation of the revocation order is proper. See Yancey v. State, 547 So.2d 1040 (Fla. 1st DCA 1989); Shaw v. State, 391 So.2d 754 (Fla. 5th DCA 1980); Kotowski v. State, 344 So.2d 602 (Fla. 3rd DCA 1977) (vacating revocation of probation upon failure to obtain prior consent for change of residence, where eviction was by court order and request for consent would have been useless act). Cf. Watkins v. State, 368 So.2d 363 (Fla. 2d DCA 1979) (sustaining probation revocation order resulting from defendant's failure to get permission for change of residence when landlord instructed him to leave, where evidence showed failure to advise probation officer of whereabouts for over one month after move).
The state argues the evidence shows appellant was away from home without permission on December 27, 1989. However, violation of community control by being away from home on December 27 was not charged in the affidavit of violation. For that reason, the violation cannot be sustained based on proof of a violation that was not charged. See Harrington v. State, 570 So.2d 1140, 1142 (Fla. 4th DCA 1990); Moser v. State, 523 So.2d 783, 785 (Fla. 5th DCA 1988); Smith v. State, 502 So.2d 77 (Fla. 3d DCA 1987).
Accordingly, as a result of the reversal of the burglary conviction, the orders finding appellant in violation of community control and probation, and the sentences based on that violation, are vacated, and the cause is remanded for reinstatement of the order placing appellant on community control.
REVERSED and REMANDED, with directions.
MINER, J., concurs.
BOOTH, J., dissents.