830 So.2d 883 (2002)
Rufus MOORE, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 2D01-198.
District Court of Appeal of Florida, Second District.
October 25, 2002.
Rehearing Denied November 18, 2002.
*884 James Marion Moorman, Public Defender, and Paul C. Helm, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Susan D. Dunlevy, Assistant Attorney General, Tampa, for Appellee.
CASANUEVA, Judge.
Rufus Moore, Jr., who entered a negotiated plea to one count of possession of drug paraphernalia, appeals the denial of his dispositive motion to suppress. He correctly asserts that the circuit court erred in concluding that the warrantless search of his residence was supported by valid consent, and, accordingly, we reverse.
The events leading to Mr. Moore's arrest occurred on May 10, 2000, when Officer Doan of the Tampa Police Department received an anonymous telephone call advising of illegal drug activity in a city of Tampa public housing unit as well as the anticipated arrival of someone in a 5.0 Ford Mustang automobile. Officer Doan knew that Mr. Moore was at the targeted apartment "quite a bit" but that a woman, whom he knew by sight, was named on the apartment's lease. Looking out of an office window with a view of the apartment's back door, Officer Doan observed a Mustang arrive. Two men, one holding a paper bag, got out of the car and met a woman who had emerged from the apartment. After speaking briefly, the three entered the apartment.
Officer Doan then contacted Detective Miller, who arrived with Detective Cox at the apartment complex approximately twenty minutes later. The three officers proceeded to the apartment for the purpose of conducting a "knock and talk" investigation. They could hear noises inside the apartment, but no one responded to their knock or their requests to be allowed in. Their next move was to contact Mr. Denson, a Tampa Housing Authority public safety officer, who arrived shortly thereafter with a key to the unit. At that point two officers stationed themselves at each door of the apartment.
At this crucial juncture the testimonies of the officers diverge, but the one consistent fact is that they entered the apartment. There was evidence that a large man responded to the knock at the door and the request to enter with "come in" or "I have no problem." Officers Miller and Doan both knew that this gentleman was not Mr. Moore, whom they subsequently found in an upstairs bathroom. Two other people, including a woman and the brother of the man who answered the door, were *885 downstairs. The officers knew that none of the people inside the apartment was listed on the lease as a tenant.
Upon entry the officers almost immediately noticed currency lying on the couch and under its pillows. Because none of those present claimed ownership of the money, the officers seized it. Detective Miller then advised that he wished to identify the occupants and that the apartment must be secured. Mr. Moore stated that he needed to go upstairs to get something, so Detective Miller followed him for safety reasons. As the officer passed the bathroom, he observed two plastic baggies containing cocaine residue; inside the bathroom, in plain view, was crack cocaine. Consequently, Detective Miller arrested Mr. Moore for possession of cocaine.
Warrantless entry of a person's home to search for objects of a crime is generally barred by the Fourth Amendment. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). An exception to this bar is the situation in which voluntary consent has been obtained from the person whose property is searched, Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), or from a third person who possesses common authority over the premises being searched, United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).
A third consent scenario, arguably applicable in this case, was presented in Illinois v. Rodriguez, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). There the Supreme Court addressed the issue of "whether a warrantless entry is valid when based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not do so." Id. at 179, 110 S.Ct. 2793. Announcing the court's holding, Justice Scalia wrote:
Whether the basis for such authority exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably. The Constitution is no more violated when officers enter without a warrant because they reasonably (though erroneously) believe that the person who has consented to their entry is a resident of the premises, than it is violated when they enter without a warrant because they reasonably (though erroneously) believe they are in pursuit of a violent felon who is about to escape.
Id. at 186, 110 S.Ct. 2793. However, the court issued the following caution:
[W]hat we hold today does not suggest that law enforcement officers may always accept a person's invitation to enter premises. Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry. As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment... `warrant a man of reasonable caution in the belief'" that the consenting party had authority over the premises?
Id. at 187-88, 110 S.Ct. 2793 (quoting Terry v. Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). If the officer does not possess the reasonable belief that the consenting person has authority over the premises, then warrantless entry without further inquiry is unlawful unless authority actually exists.
This case must be measured by the standards set forth in Rodriguez. Despite the *886 conflicting testimony regarding the officers' entry into the apartment, the record established that a large man appeared at the door. His response to the request for permission to enter suggested consent: "come in" or "I have no problem." Clearly, however, the officers knew that this person was not Mr. Moore, who was known to frequent, if not to reside at, the apartment. Prior to entry the officers had consulted with a member of the Housing Authority and gleaned no information from that meeting suggesting that the man answering the door had authority over the premises, and they knew that the only lawful tenants were a woman and two younger children.
An officer cannot always assume that the invitation to enter is authorized by a rightful occupant. Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); Morse v. State, 604 So.2d 496, 500 (Fla. 1st DCA 1992). This court has noted that the "mere fact that an unknown person opens the door when a police officer knocks cannot, standing alone, support a reasonable belief that the person possesses authority to consent to the officer's entry." Cooper v. State, 706 So.2d 369, 371-72 (Fla. 2d DCA 1998).
Here, the record provides no factual support for a conclusion that the officers possessed a reasonable, albeit erroneous, belief that the person consenting to the entry had the authority to do so. Instead, the facts demonstrate that the officers knew nothing about the status of the man responding; his connection to the apartment was never confirmed. Unfortunately, in their eagerness to investigate an uncorroborated anonymous tip, the officers took no time to ascertain whether the person who answered the door could lawfully consent to their entry.
In a similar case, the defense contended that evidence was improperly seized from the defendant's motel room because no one with actual or apparent authority permitted the police officers to enter. The court in Williams v. State, 788 So.2d 334, 337 (Fla. 5th DCA 2001), stated:
[T]he police, based on nothing more than an unidentified woman with no known connection to the motel room other than her act of opening the door, concluded that she had the actual or apparent authority to consent to such entry. We find that conclusion to be unsupported by the facts then known to the police officers.
Like the Fifth District in Williams, we hold that the facts available to the police officers would not warrant a person of reasonable caution to believe that the unknown third party who appeared at the door possessed common authority over the premises. Accordingly, the circuit court erred in denying Mr. Moore's suppression motion.
Reversed and remanded for further proceedings consistent with this opinion.
PARKER and GREEN, JJ., concur.