OPINION *Page 2 
{¶ 1} On November 13, 2006, the Licking County Grand Jury indicted appellant, Jason Shaffer, on one count of kidnapping in violation of R.C. 2905.01 and one count of domestic violence in violation of R.C. 2919.25. Said charges arose from an incident involving appellant and his former live-in girlfriend, Nichole Williams.
 {¶ 2} On January 2, 2007, appellant filed a motion to suppress, claiming an illegal search of his residence. Appellant argued the police entered his residence with Ms. Williams's consent, but she did not have the authority to grant consent as she had moved out of the residence at least six weeks prior to the search. During the search, police discovered strips of duct tape which Ms. Williams claimed appellant had used to bind her hands and feet. A hearing was held on January 23, 2007. By judgment entry filed January 24, 2007, the trial court denied the motion.
 {¶ 3} A jury trial commenced on April 23, 2007. The jury found appellant guilty as charged. By judgment entry filed May 17, 2007, the trial court sentenced appellant to an aggregate term of six years in prison.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 5} "A TRIAL COURT ERRS WHEN IT DENIES A MOTION TO SUPPRESS EVIDENCE OBTAINED DURING A WARRANTLESS SEARCH, CONDUCTED AFTER OBTAINING CONSENT FROM A PERSON UNAUTHORIZED TO GIVE CONSENT." *Page 3 
 II {¶ 6} "MR. SHAFFER'S TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO OBJECT TO IMPROPER QUESTIONING BY THE PROSECUTOR AND TO THE PROSECUTION'S ATTACK ON MR. SHAFFER'S CHARACTER ON CROSS-EXAMINATION WITHOUT A BASIS ON WHICH TO DO SO. THIS DEFICIENT PERFORMANCE VIOLATED MR. SHAFFER'S RIGHTS TO COUNSEL AND TO DUE PROCESS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS."
 I {¶ 7} Appellant claims the trial court erred in denying his motion to suppress. We disagree.
 {¶ 8} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning (1982),1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 485; State v.Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an *Page 4 
appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93;State v. Claytor (1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657,1663," . . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 9} Specifically, appellant argues his former live-in girlfriend, Nichole Williams, did not have the authority to consent to a search of his residence as she had moved out of the residence at least six weeks prior to the search.
 {¶ 10} In United States v. Matlock (1974), 415 U.S. 164, the United States Supreme Court held that a third party with common authority over the premises can consent to a search. In fn. 7, the Matlock court explained "common authority" as follows:
 {¶ 11} "Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, seeChapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828
(1961) (landlord could not validly consent to the search of a house he had rented to another), Stoner v. California, 376 U.S. 483,84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (night hotel clerk could not validly consent to search of customer's room) but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the *Page 5 
right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."
 {¶ 12} This rule was extended in Illinois v. Rodriguez (1990),497 U.S. 177, wherein the United States Supreme Court held at paragraph two of the syllabus, "A warrantless entry is valid when based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not."
 {¶ 13} At the conclusion of the suppression hearing, the trial court found the following:
 {¶ 14} "THE COURT: It's obviously clear as a result of State's Exhibit 1 she was on the lease. It's also very clear that she had moved out but had retained a key, had a key to the residence, had items of hers and apparently the children remaining in the apartment; had agreed in a writing with respect to the property but did not include an exclusive right for the use of the property to the defendant, to wit: To the effect that Nichole Williams did not have the right to go back into the property to retrieve her — or to the apartment to retrieve her property.
 {¶ 15} "With that, being on the lease, still having a key, giving her the opportunity to go into the property, having property there, it's apparent that she had the authority to give permission to the Granville police to enter the property, and the motion to suppress is denied." January 23, 2007 T. at 37-38.
 {¶ 16} Ms. Williams testified that although she had moved out of the residence, her name was still on the lease to the premises. T. at 7-8; State's Exhibit 1. She still *Page 6 
had personal property in the residence, and still had a key to the residence on the day of the incident and at the time of the search. T. at 8-9, 11.
 {¶ 17} The investigating officer, Granville Police Officer Eric Moynihan, testified he understood Ms. Williams to be on the lease to the residence when he obtained her consent to search. T. at 25. He also knew she had property therein and had a key. T. at 27.
 {¶ 18} As noted in Rodriquez at 186, the standard is one of reasonableness:
 {¶ 19} "As we put it in Brinegar v. United States, 338 U.S. 160, 176,69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949):
 {¶ 20} "`Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability.'
 {¶ 21} "We see no reason to depart from this general rule with respect to facts bearing upon the authority to consent to a search. Whether the basis for such authority exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably. The Constitution is no more violated when officers enter without a warrant because they reasonably (though erroneously) believe that the person who has consented to their entry is a resident of the premises, than it is violated when they enter without a warrant because they reasonably (though erroneously) believe they are in pursuit of a violent felon who is about to escape."
 {¶ 22} The Rodriguez court further held at 188-189: *Page 7 
 {¶ 23} "As with other factual determinations bearing upon search and seizure, determination of consent to enter must `be judged against an objective standard: would the facts available to the officer at the moment . . . "warrant a man of reasonable caution in the belief"' that the consenting party had authority over the premises? Terry v.Ohio, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid."
 {¶ 24} Upon review, we find the facts to be sufficient to have created a reasonable belief that Ms. Williams had the right to give consent to search the residence. The trial court did not err in denying appellant's motion to suppress.
 {¶ 25} Assignment of Error I is denied.
 II {¶ 26} Appellant claims he was denied the effective assistance of trial counsel. We disagree.
 {¶ 27} The standard this issue must be measured against is set out inState v. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus, certiorari denied (1990), 497 U.S. 1011. Appellant must establish the following:
 {¶ 28} "2. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (State v. Lytle [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; Strickland v.Washington [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.) *Page 8 
 {¶ 29} "3. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."
 {¶ 30} Specifically, appellant argues his trial counsel was deficient in failing to object to improper questioning by the prosecutor, failing to object to the prosecutor's attack on his character, and failing to object to photographs of his residence depicting drug paraphernalia.
 {¶ 31} Appellant argues his trial counsel should have objected to the following questions:
 {¶ 32} "Q. Nichole, the indictment contains several counts — or two counts, actually, but several elements within each count. First and foremost, it is alleged that all of this was done by force. Do you agree with that?
 {¶ 33} "A. Yes, I do.
 {¶ 34} "Q. Okay. Did you consent or allow any of this to happen to you?
 {¶ 35} "A. No, I did not.
 {¶ 36} "Q. It also alleges that your liberty was restrained. Is that accurate?
 {¶ 37} "A. Yes.
 {¶ 38} "Q. Okay. Did you wish to leave that apartment?
 {¶ 39} "A. I wanted to leave that apartment.
 {¶ 40} "Q. Okay. Were you prevented from leaving that apartment?
 {¶ 41} "A. Yeah.
 {¶ 42} "Q. With purpose to terrorize. Were you afraid?
 {¶ 43} "A. Yes, I was. *Page 9 
 {¶ 44} "Q. You had mentioned that at one point he threatened to kick your ass and kill you.
 {¶ 45} "A. Yeah.
 {¶ 46} "Q. How did that affect you emotionally?
 {¶ 47} "A. It's affected me all the way up to this day. I think about it every day." April 23, 2007 T. at 76-77.
 {¶ 48} The testimony that preceded this questioning centered upon appellant's use of force against Ms. Williams i.e., how he pushed her, put his hands over her mouth, threw her to the floor, and held her down. Id. at 58-60. Although the questions taken in toto appear to be leading, we find they are not given the extent of the previous testimony describing the incident. We find defense counsel was not deficient on this issue.
 {¶ 49} Appellant also argues his counsel was deficient in not objecting to testimony concerning drug paraphernalia found in his residence. Officer Moynihan responded to a question about what was found during the search of appellant's residence:
 {¶ 50} "A. Several items that she described would have been there. The ligatures of duct tape, the rolls of used duct tape, the actual roll of duct tape, a razor blade, screwdriver and some various drug paraphernalia." T. at 157.
 {¶ 51} Photographs of the items seized were also presented (State's Exhibits 5-A through 5-F). Officer Moynihan testified the items were in Ms. Williams's bedroom. T. at 156-158. We fail to find any deficient representation as to this issue. The comment *Page 10 
was only in passing and could possibly have been negative toward Ms. Williams as the items were found in her bedroom.
 {¶ 52} Upon review, we do not find any deficiency in defense counsel's performance regarding the complained of areas.
 {¶ 53} Assignment of Error II is denied.
 {¶ 54} The judgment of the Court of Common Pleas of Licking County, Ohio is hereby affirmed.
 Farmer, P.J. Wise, J. and Delaney, J. concur. *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio is affirmed. *Page 1