SUSAN L. CARNEY, Circuit Judge,
concurring:
The majority has conducted a careful analysis in a difficult and highly fact-specific ease. Nonetheless, I find that I cannot join it in concluding that there was no clear error in the district court’s ruling that exigent circumstances justified the agents’ warrantless entry into Marin’s motel room. Because I do join, however, in the majority’s determination that Marin’s consent to search was voluntary, and because I conclude that the taint created by the unlawful entry was dissipated, I concur in the majority’s decision to affirm the judgment of the district court.
The “basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable,” Brigham City v. Stuart, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006), applies equally to warrantless searches of a motel room, see Stoner v. California, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). A warrantless search that is supported by both probable cause and exigent circumstances will overcome the presumption of unreasonableness. See Kirk v. Louisiana, 536 U.S. 635, 638, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002) (per curiam). Although exigency in “the need to prevent the imminent destruction of evidence has long been recognized as a sufficient justification for a warrantless search,” Kentucky v. King, — U.S. —, 131 S.Ct. 1849, 1856, 179 *79 L.Ed.2d 865 (2011), the government bears “a heavy burden” when attempting to demonstrate that such circumstances were present when the search took place, Welsh v. Wisconsin, 466 U.S. 740, 749-50, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984).
The majority here concludes that Marin’s attempt to slam her motel room door upon seeing O’Connor created an urgent need for the agents to enter the room to ensure that Marin would not dispose of the drugs that the agents had probable cause to believe were inside. I agree the agents had probable cause to believe that Marin was a drug courier in possession of over a kilogram of heroin.[1] I also agree that Marin’s actions upon seeing, unexpectedly, O’Connor standing with the chambermaid informs our analysis of whether an exigency existed. I am troubled, however, that the majority’s finding of exigency ultimately appears to turn on the speed and force with which Marin attempted to close her door when she saw O’Connor, an un-uniformed stranger, standing there.
As the majority notes, “[t]he core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer to believe that there was an urgent need to ... take action.” United States v. Klump, 536 F.3d 113, 117-18 (2d Cir.2008). As I see it, the determinative “moment of entry” in this case occurred when O’Connor “put [her] hand up to block” Marin from closing the door. Tr. of Suppression Hr’g at 96:3-4; see also Maj. Op. at 68-69. As the Supreme Court recently cautioned in Kentucky v. King, however, even if an occupant has opened the door to law enforcement officers, that “occupant need not allow the officers to enter the premises and may refuse to answer any questions at any time.” 131 S.Ct. at 1862. When the housekeeper knocked and Marin began to open the door, Marin had no obligation to speak to O’Connor; nor was she required to allow O’Connor to enter her room.
What, then, were the exigent circumstances that justified the agents’ warrant-less entry as Marin shut the door? The majority asserts that Marin created an exigency by “suddenly and forcefully attempting to slam shut a door she had just opened.” Maj. Op. at 74 (internal quotation marks omitted). It characterizes Marin’s actions as “the verbal, visual, or aural equivalent of ‘The Police are here, destroy the drugs.’ ” Maj. Op. at 75 (quoting United States v. Chambers, 395 F.3d 563, 577 (6th Cir.2005) (Sutton, J., dissenting)).
With respect, I disagree. Under Kentucky v. King, as one of our sister circuits has held, a hotel guest like Marin was “within [her] bounds in [her] attempt to close the door” on O’Connor and the chambermaid. United States v. Ramirez, 676 F.3d 755, 762 (8th Cir.2012) (discussing Kentucky v. King and making alternative finding that suspect’s attempt to close hotel door on officers waiting outside was insufficient to establish exigent circumstances justifying warrantless entry). “That [she] did so, without more, does not bolster the claim that it was reasonable to conclude that the destruction of evidence was imminent.” Ramirez, 676 F.3d at 762. I am concerned that the majority’s rationale here could be invoked “whenever probable cause exists that readily disposable drugs are in the home” and a defendant acts in an abrupt or uncivil manner in denying entry to law enforcement officers. Chambers, 395 F.3d at 576 (Sutton, J., dissenting).
*80 Further, I question whether the circumstances in this case, as they appeared when O’Connor forcibly entered Marin’s room, provided an objectively reasonable basis for believing that Marin understood the stranger at her door to be a law enforcement agent. If not, it is difficult to interpret Marin’s closing the door with force as signaling her resistance to the police and foretelling an attempt to destroy evidence. Indeed, O’Connor was dressed in plain clothes — an untucked short-sleeved white golf shirt and green capri slacks. When Marin attempted to slam the door, O’Connor had not identified herself as “police.” And although O’Con-nor wore a two-and-one-half inch gold badge on her hip, there was no testimony to suggest that Marin had looked down toward the badge or that the badge was even visible given the position of the parties and the matter of seconds between when Marin opened the door and when she attempted to close it.[2] For these reasons, I harbor serious doubts that exigent circumstances justified the agents’ warrant-less entry, and I believe the district court clearly erred in its analysis concluding to the contrary.
Despite my departure from its reasoning on the lawfulness of the entry, I join in the majority’s result because I conclude that the government has shown that Marin’s subsequent consent to search the room was both voluntary and also “sufficiently an act of free will to purge the primary taint of the unlawful invasion.” Brown v. Illinois, 422 U.S. 590, 599, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).
We have observed that “[w]hen a consent to search follows an illegal entry,” the government must “show more than the voluntariness of the consent; it must also demonstrate that the taint of the initial entry has been dissipated in order to admit evidence seized following the illegal entry.” United States v. Snype, 441 F.3d 119, 132 (2d Cir.2006). For the reasons set forth by the majority, I find no clear error in the district court’s ruling that Marin’s consent to search her motel room was voluntarily given. The separate but overlapping taint inquiry, which (in light of its ruling on the alleged exigency) the district court did not reach, presents a more difficult question.
In assessing “whether the taint of [an] illegal entry was sufficiently diminished, we consider four factors: whether a Miranda warning was given, the ‘temporal proximity’ of the illegal entry and the alleged consent, ‘the presence of intervening circumstances,’ and ‘the purpose and flagraney of the official misconduct.’ ” United States v. Oguns, 921 F.2d 442, 447 (2d Cir.1990) (quoting Brown, 422 U.S. at 603-04, 95 S.Ct. 2254). Here, the record reveals the following.
First, Marin did not receive a Miranda warning in the interim between the entry and the search of her suitcases, and the record provides no reason for the omission.[3] The rights secured by Miranda were not fully explained through the consent form. But second, approximately fifteen minutes had elapsed between the very brief, tumultuous entry and Marin’s consent to search. The record reflects that during this interlude Marin had “calmed down.” Tr. of Suppression Hrg. *81 at 35:20. Although handcuffed, she engaged in conversation in Spanish with Agent Aceves during this time. Marin Moreno, 2009 WL 454548, at *3. Third, when Aceves requested Marin’s consent to search the room, she “agreed immediately.” Tr. of Suppression Hr’g at 36:7. In addition, she told the agents that she had been searched by customs officials upon her arrival at the airport that morning— implying, it seems, that she was not concerned that the agents would find any item of consequence, and underscoring the voluntariness of her consent. Tr. of Suppression Hr’g at 36:9-10. And, after Aceves translated its contents into Spanish for her, line by line, and wrote the Spanish version out for her on the forms, Marin agreed to and did sign a printed consent to search. The form stated, inter alia, ‘T have not been threatened, nor forced in any way,” and “I freely consent to this search.” Suppression Hr’g, Gvt. Ex. 1. Finally, our panel has been directed to no evidence suggesting that the agents’ conduct in entering or searching was “flagrantly illegal or fraught with evil purpose.” Oguns, 921 F.2d at 448.
Although the question is close, I conclude that these circumstances, particularly Marin’s comment about her earlier uneventful passage through customs, sufficed to “sever the causal connection between [the] entry and [the] subsequent consent to search.” Snype, 441 F.3d at 135; cf. id. (finding dissipation of taint where “intervening events,” including the defendant’s written consent to search, “effectively replaced the fearful atmosphere of the initial forcible entry with relative calm”).
I therefore concur in the majority’s affirmance of the district court’s judgment.

. Probable cause alone, of course, does not establish exigency. See Welsh, 466 U.S. at 753, 104 S.Ct. 2091 (recognizing that "no exigency is created simply because there is probable cause to believe that a serious crime has been committed”).

. The record does not reflect whether the housekeeper was standing next to or in front of O'Connor or whether O'Connor's untucked shirt obscured her badge from view.

. In addition, O'Connor told Marin that "if there’s something here that you want to tell us or if there’s something here that shouldn’t be here it’s in your best interest to tell us now while you can before we find it on our own.” Tr. of Suppression Hrg. at 104:12-15; Maj. Op. at 77.