LILLEHAUG, Justice (concurring).
I agree with the opinion of the court that Lionel Lopez committed a burglary when he entered another guest's hotel room without that guest's consent. I write separately and respectfully, however, because I have difficulty with the court's exclusive reliance on State v. McDonald , 346 N.W.2d 351 (Minn. 1984). Certainly McDonald is helpful, but I would take the next step and apply our usual principles of statutory interpretation. Applying those principles, I conclude that the phrase "enters a building without consent" is ambiguous, but that the Legislature intended that the burglary statute cover Lopez's conduct: unconsented-to entry of a portion of a building with intent to commit a crime.
I.
The first-degree burglary statute, in relevant part, makes it a crime for a person to "enter[ ] a building without consent and *339 with intent to commit a crime." Minn. Stat. § 609.582, subd. 1 (2016). "Enters a building without consent" has three statutory definitions: (1) "to enter a building without consent of the person in lawful possession," (2) "to enter a building by using artifice, trick, or misrepresentation to obtain consent to enter from the person in lawful possession," or (3) "to remain within a building without the consent of the person in lawful possession." Minn. Stat. 609.581, subd. 4 (2016).
In this case, Lopez entered one portion of the building with consent, but then entered another portion of the building without consent. The question before us is: does this factual situation satisfy the elements of the crime of burglary?
Relying solely on McDonald , the majority says yes. McDonald upheld the burglary conviction of a defendant who entered a drugstore open to the public but who then, "without consent, entered a closed storage room that was off limits to the general public." 346 N.W.2d at 352. Following is the entirety of McDonald's discussion relative to the issue before us today: "We uphold the conviction on the ground that the burglary was complete once defendant exceeded the scope of the consent given him and other members of the public and entered the storage room with intent to gain access to the locked pharmacy from there." Id.
McDonald is useful precedent, but has precious little, if any, analysis.[1] It would have been helpful had McDonald explained its rationale, because it was applying the facts to a different version of the burglary statute. The burglary statute in effect when McDonald committed his burglary contained a different definition of "building" than today's statute. The definition then in effect provided that "building" "includes portions of such structure as are separately occupied." Minn. Stat. § 609.58, subd 1(2) (1982). The current statute's definition of "building" no longer contains that clear language. See Minn. Stat. § 609.581, subd. 2 (2016). In my view, McDonald alone does not unequivocally answer the question before us. Therefore, I resort to principles of statutory interpretation.
II.
The statutory definition of "enters a building without consent" is perfectly clear when applied to a single-use building or a single-family dwelling. If the person in lawful possession of a single-family home consents to another person entering the home, that person cannot subsequently be convicted of burglarizing the home. The non-consent element would be lacking.
But the meaning of "enters a building without consent" becomes more complicated when we consider buildings that contain multiple, separate portions. After all, the owner or manager of an apartment building or hotel is not considered to be "in lawful possession" of the tenant-occupied units contained within that larger structure. It is the lawful occupant of a particular unit who lawfully possesses that unit, and thus can consent (or not consent) to another person entering that unit. See, e.g. , Stoner v. California , 376 U.S. 483, 489, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) ("At least *340 twice [the Supreme] Court has explicitly refused to permit an otherwise unlawful police search of a hotel room to rest upon consent of the hotel proprietor.... In Lustig [v. United States , 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949) ] the manager of a hotel allowed police to enter and search a room without a warrant in the occupant's absence, and the search was held unconstitutional."); Abel v. United States , 362 U.S. 217, 241, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960) (concluding that the hotel only had "the exclusive right to [a hotel room's] possession" after the occupant had vacated the room); Thomas v. Cohen , 304 F.3d 563, 574 (6th Cir. 2002) ("[T]enants in lawful possession of a home or apartment generally have a legitimate expectation of privacy by virtue of having a property interest in a particular piece of real estate.").
In this context, there are two reasonable interpretations of the phrase "enters a building without consent."[2] On the one hand, as Lopez urges, "enters a building without consent" could mean that once a person has consent to enter the building, the person cannot commit a burglary therein, even if that person enters a separate portion of the building without the consent of the person in lawful possession of that portion. As Lopez argues, the current statute does not include any references to "portions."
On the other hand, "enters a building without consent" could be read as necessarily including the entering of a separate portion of a building without consent. This reading recognizes the modern reality that buildings often consist of multiple units or subdivisions that are put to different uses and are possessed by different occupants. Under this interpretation, if Lopez entered the hotel lobby with consent, he can nevertheless be guilty of first-degree burglary by entering a hotel room without the consent of the occupant.
Because there are two reasonable readings of the phrase "enters a building without consent," it is ambiguous. See State v. Nelson , 842 N.W.2d 433, 443 (Minn. 2014). Therefore, I turn to the canons of construction to determine which interpretation is more reasonable.
III.
Several canons of construction are useful here. I first consider "the mischief to be remedied," "the object to be obtained," and the "consequences of a particular interpretation." Minn. Stat. § 645.16 (2016).
Plainly, the purpose of the burglary statute is to prevent people from unlawfully entering buildings to commit crimes. The statute further singles out the burglary of a dwelling as first-degree burglary, suggesting that the Legislature thought it was particularly important to secure people while they are residing in their "permanent or temporary residence." Minn. Stat. § 609.581, subd. 3 (2016). Courts have recognized that the dignity interest a person has while residing in a hotel room or apartment is tantamount to the dignity interest one has while residing in a house. See, e.g. , City of Memphis v. Greene , 451 U.S. 100, 127, 101 S.Ct. 1584, 67 L.Ed.2d 769 (1981) ("[A] man's home is his castle. The interest in privacy has the same dignity in a densely populated apartment complex ... or in an affluent neighborhood of single-family homes."); United States v. Ramos , 12 F.3d 1019, 1023 (11th Cir. 1994) ("Use of a motel room for lodging provides the same expectation of privacy as does a *341 home."). Lopez's position-that once you enter a building with consent you cannot commit a burglary anywhere therein-would make it difficult to secure people who reside in hotel rooms or apartments, thereby not remedying the "mischief," undermining the "object to be attained," and producing harmful consequences. The only way for the burglary statute to be workable in the context of multi-unit buildings is to conclude that the phrase "enters a building without consent" necessarily includes unconsented-to entry into separate portions of the building.
A second useful canon to apply in this case is the whole-statute canon. See State v. Riggs , 865 N.W.2d 679, 683 (Minn. 2015). Here, a strong clue is provided in the very same burglary statute, specifically the subdivision regarding second-degree burglary, Minn. Stat. § 609.582, subd. 2 (2016). A person commits second-degree burglary if the person "enters a building without consent and with intent to commit a crime ... [if] the portion of the building entered contains a banking business ... [or if] the portion of the building entered contains a pharmacy...." Minn. Stat. § 609.582, subd. 2(a)(2)-(3) (emphasis added). These references to "portions" suggest that the word "building" includes separate areas within that building.
Third, when interpreting an ambiguous statute we may also consider "the circumstances under which [the statute] was enacted" and "the former law." Minn. Stat. § 645.16. We have stated that "[t]he Legislature's amendment of a statute creates a presumption that the Legislature intended to change the law." Braylock v. Jesson , 819 N.W.2d 585, 588 (Minn. 2012). But "[t]he presumption is rebutted ... if the Legislature intended only to clarify the law." Id. Whether an amendment is a substantive change or just a clarification is a question of statutory interpretation, and requires us to "compare the language of the pre-amendment and post-amendment versions of [the] statute." Id.
At the time McDonald committed his crime, the statute defined "building" as follows: " 'Building' includes a dwelling or other structure suitable for affording shelter for human beings or appurtenant to or connected with a structure so adapted, and includes portions of such structure as are separately occupied ." Minn. Stat. § 609.58, subd 1(2) (1982) (emphasis added). The amended definition (effective August 1, 1983) provides that: " 'Building' means a structure suitable for affording shelter for human beings including any appurtenant or connected structure." Minn. Stat. § 609.581, subd. 2 (1984). Did the removal of the "portions" language necessarily mean that the Legislature intended to place the entering of a separately occupied portion of a building without consent outside the reach of the statute?
I think not. We faced a similar issue involving the burglary statute in State v. Vredenberg , 264 N.W.2d 406 (Minn. 1978). The question in Vredenberg was whether houseboats were included within the statutory definition of "building" in the burglary statute. Id. at 406. Vredenberg's argument was that, because the pre-1963 burglary statute expressly defined "building" as including a "vessel," but the then-current version of the statute did not specifically include "vessel," a houseboat could not be burglarized. Id. at 407. We rejected Vredenberg's argument, and held that:
The fact that Minn. Stat. § 609.58, subd. 1(2), does not specifically include 'vessel' within the definition of 'building' does not mean that the legislature intended to exclude boats.... The aim of the drafters of the revised statute was to streamline the definition, not to omit certain *342 structures from the protection of the statute.
Id.
Granted, the streamlining we recognized in Vredenberg was documented by detailed legislative history, for which there is no 1983 counterpart. But we do know that, when the Legislature changed the burglary statute in 1983, only a few years after Vredenberg , the Legislature's intent was to strengthen, not weaken, the statute: it doubled the maximum sentence and fine for the burglary of an occupied dwelling. Compare Minn. Stat. § 609.58, subd. 2(2) (1982) (allowing a person to be sentenced "[t]o imprisonment for not more than ten years or to payment of a fine of not more than $10,000, or both, if the building entered is a dwelling and another person not an accomplice is present in it"), with Act of June 14, 1983, ch. 321, § 2, 1983 Minn. Laws 2058, 2059 (allowing a person to be sentenced "to imprisonment for not more than 20 years or to payment of a fine of not more than $20,000, or both, if ... the building is a dwelling and another person not an accomplice is present in it").[3] It strikes me as implausible that, at the same time the Legislature made the statute stricter on burglaries of dwellings, it would have decriminalized (by changing the definition of "building") the unconsented-to entry of apartments and hotel rooms. Likely the definitional amendment was not a new, irrational carve-out from the statute's historic breadth, but simply more streamlining.
Considering these canons together, the better reading of the phrase "enters a building without consent" is that the statute extends to entering portions of the building-in this case, a hotel room-without the consent of the occupant. That reading is also consistent with McDonald . Therefore, Lopez committed first-degree burglary when, without consent and with the intent to commit a crime, he entered someone else's hotel room.

The appeal, filed in December 1982, came directly to us from the district court, rather than from the court of appeals. The Minnesota Court of Appeals did not begin its work until November 1, 1983. Minn. Stat. § 480A.01 (2016). McDonald was considered on March 19, 1984, and the three-paragraph opinion was filed on April 6, 1984, less than three weeks later. The single paragraph discussing the burglary issue consists of three sentences: the first states the facts, the second rejects an argument by the State (not relevant here), and the third is the holding.

The holding of the court of appeals majority was based on a third interpretation-that a room is a separate "building." The court of appeals dissent disagreed. The opinion of our court does not reach that legal issue. Neither does this concurrence.

The Legislature continued to strengthen the burglary statute in subsequent sessions. In 1984, the maximum fine for burglarizing a dwelling was increased to $35,000. See Act of May 2, 1984, ch. 628, art. 3, § 6, 1984 Minn. Laws 1576, 1661. In 1986, a mandatory minimum sentence was added for burglary of an occupied dwelling. See Act of Apr. 1, 1986, ch. 470, § 19, 1986 Minn. Laws 1070, 1075.